# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GULF PACKAGING, INC.,[1] | ) | Case No. 15-15249 |
| | ) | |
| Debtor. | ) | Honorable Pamela S. Hollis |
| | ) | |
| | ) | **Hearing Date:** **May 26, 2015** |
| | ) | **Hearing Time:** **10:00 a.m.** |
| | ) | **Courtroom:** **644** |
| | ) | |

## <u>NOTICE OF MOTION</u>

PLEASE TAKE NOTICE that on **Tuesday, May 26, 2015 at 10:00 a.m.**, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Pamela S. Hollis in the courtroom usually occupied by her, No. 644, in the Dirksen Federal Building at 219 South Dearborn Street, Chicago, Illinois, or whomever may be sitting in her place and stead, and then and there present the **DEBTOR'S MOTION TO ESTABLISH AND APPROVE PROCEDURES FOR THE SALE OF CERTAIN ASSETS**, a copy of which is attached hereto and hereby served upon you, at which time and place you may appear.

---

[1] The last four digits of the Debtor's tax identification number are 5030.

GULF PACKAGING, INC.


By:_____/s/ *Joseph D., Frank*_____
Joseph D. Frank (IL ARDC 6216085)
Jeremy C. Kleinman (IL ARDC 6270080)
**FRANKGECKER, LLP**
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
Telephone: (312) 276-1400
Facsimile: (312) 276-0035
Email: jfrank@fgllp.com
      jkleinman@fgllp.com

    -and-


**GRAY REED & MCGRAW, P.C.**
Jason S. Brookner (*pro hac vice* pending)
Micheal W. Bishop (*pro hac vice* pending)
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
      mbishop@grayreed.com

**PROPOSED COUNSEL TO THE DEBTOR**

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GULF PACKAGING, INC.,[1] | ) | Case No. 15- 15249  (PSH) |
| | ) | |
| Debtor. | ) | |
| | ) | |

### DEBTOR'S MOTION TO ESTABLISH AND APPROVE
### PROCEDURES FOR THE SALE OF CERTAIN ASSETS

Gulf Packaging, Inc., the above-captioned debtor and debtor in possession (the "Debtor," "GPI" or the "Company") for its Motion to Establish and Approve Procedures for the Sale of Certain Assets (the "Motion"), respectfully represents:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### INTRODUCTION

3. On this date (the "Petition Date"), GPI filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). GPI continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No request has been made for the appointment of a trustee or examiner, and no statutory committee has yet been appointed.

---

[1] The last four digits of the Debtor's tax identification number are 5030.

## BACKGROUND

5.     The Debtor is a national distributor of packaging equipment and supplies, which sells its product by and through several independent entities ("Affiliates").[2] Many of these Affiliates are also guarantors under GPI's credit facility with FCC, LLC d/b/a First Capital ("FCC"). When the Debtor is combined with the Affiliates, there are over twenty (20) warehousing locations to better serve the Debtor's customer base.

6.     Additional information about the Debtor, its business and corporate and capital structure is set forth in the *Declaration of Edward T. Gavin, CTP in Support of Chapter 11 Petition and First Day Pleadings* (the "Gavin Declaration"), filed on the Petition Date.

## RELIEF REQUESTED

7.     By this Motion, pursuant to sections 105 and 363 of the Bankruptcy Code and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtor respectfully seeks entry of an order, substantially in the form attached hereto as Exhibit "A," authorizing the Debtor to implement expedited procedures (the "Asset Sales Procedures") to sell certain inventory and equipment (each an "Asset" and, collectively, the "Assets") in any individual transaction or series of related transactions to a single buyer or group of related buyers with a sale price equal to or less than $250,000.00, free and clear of all liens, claims, interests, and encumbrances (collectively, "Liens"), without the need for further notice or Court approval, except as set forth herein, with such Liens attaching to the proceeds of sale with the same validity, extent, and priority as existed immediately prior to the sale

---

[2] As used herein, "Affiliate" means a company that has a relationship – formal or informal – to the Debtor, and sells packaging products under a variation of the Gulf name. Unless otherwise set forth, use of the term "Affiliate" is not intended to have the same meaning as the "affiliate" term of art defined in section 101(2) of the Bankruptcy Code. All rights with respect to this issue are reserved.

2619343.6

A.    **Sale of Certain Assets**

8.      Prepetition, in the ordinary course of business and with the consent of FCC, the Debtor consummated several sales of inventory and equipment to third parties. Given the nature of the Debtor's and the buyers' business, these sales were typically consummated quickly, to meet the immediate needs of the buyer and the buyer's customers. This served to maximize the value of the assets sold, whereas had the sales took longer to close, the value of the inventory would have decreased and perhaps even become stale. These sales were often to parties familiar with the Debtor's inventory and therefore in the best position to know the market value and salability of that inventory, including customers and former affiliates.

9.      In order to ensure that value continues to be maximized during this chapter 11 case for the benefit of all constituents, and in an effort to minimize expenses, the Debtor seeks approval to make bulk Asset sales to third parties ("Purchasers"). Although GPI continues to operate its business and make non-bulk sales of Assets in the ordinary course, GPI believes that the ability to quickly and efficiently sell certain Assets in bulk, without seeking specific authority from the Court on a sale-by-sale basis, will foster its value-maximizing goals.

10.     Given the relatively modest amounts at stake, as compared with the relatively high cost of carrying and securing Assets, it is an inefficient use of the Debtor's scarce resources to seek Court approval each and every time the Debtor has an opportunity to sell Assets, no matter the amount of sale proceeds. Indeed, the cost and delay associated with seeking Court approval for each individual Asset sale could eliminate or substantially diminish the economic benefits of the transactions. Moreover, the time delay associated with drafting a motion, providing notice and having a hearing, could destroy the opportunity to sell certain Assets as often, the buyer's need for the Assets in question are immediate, so that the buyer can turn around and sell to its customers on a

3

"needed right now" basis. As a consequence, absent Court approval of the proposed Asset Sales Procedures, certain sales might never be consummated, and the resulting value thereof never realized, as potential buyers will just go and meet their immediate needs from another source. This, in turn, will leave GPI Assets that may become stale, obsolete or difficult if not impossible to sell individually (rather than in bulk).

11.     For the foregoing reasons, the Debtor requests that the Court approve the proposed Asset Sale Procedures, which will allow for the sale of Assets in a prompt and cost-efficient manner while, at the same time, protecting the rights of creditors and other parties in interest.

**B.    <u>Asset Sale Procedures</u>**

12.     The Debtor proposes the following Asset Sale Procedures:

a.      With regard to sales or transfers of Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a sale price less than or equal to $75,000.00:[3]

   i.      the Debtor is authorized to consummate such transactions if the Debtor determines, in the reasonable exercise of its business judgment, that such sales are in the best interest of the estate, without further order of the Court;

   ii.     any such transactions shall be deemed final and fully authorized by the Court, and shall be free and clear of Liens with such Liens attaching to the proceeds of sale with the same validity, extent, and priority as existed immediately prior to the transaction;

   iii.    the Debtor shall, at least five (5) calendar days prior to closing such sale or effectuating such transfer, give written notice of the sale or transfer substantially in the form attached hereto as **<u>Exhibit B</u>** (each notice, a "<u>Sale Notice</u>") to the following (collectively the "<u>Sale Notice Parties</u>"): (a) the Office of the United States Trustee for the Northern District of Illinois (the "<u>U.S. Trustee</u>"); (b) counsel to any statutory committee appointed in this chapter 11 case (the "<u>Committee</u>") and, until such appointment, the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims (the

---

[3] For purposes of these Asset Sale Procedures, sale price shall refer to the Debtor's estimate of the net proceeds of any sale transaction.

4

"Committee"); (c) FCC, LLC d/b/a First Capital ("FCC"); (d) any known affected creditor(s), including counsel to any creditor asserting a Lien on the relevant Assets; and (e) those parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "Sale Notice Parties"), and shall file such Sale Notice with the Court; and

iv.   Each Sale Notice shall contain the following: (a) an identification of the Assets being sold or transferred; (b) an identification of the purchaser of the Assets; (c) the purchase price; and (d) the material terms of the sale or transfer.

b.   With regard to the sales or transfers of Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a sale price greater than $75,000.00 and less than or equal to $250,000.00:

i.   the Debtor is authorized to consummate such transactions if the Debtor determines, in the reasonable exercise of its business judgment, that such sales are in the best interest of the estate, without further order of the Court, subject to the below;

ii.   any such transactions shall be free and clear of all Liens with such Liens attaching to the proceeds of sale with the same validity, extent, and priority as existed immediately prior to the transaction;

iii.   the Debtor shall, at least seven (7) calendar days prior to closing such sale or effectuating such transfer, serve a Sale Notice on the Sale Notice Parties, in the form attached as **Exhibit B**;

iv.   if no written objections are filed by the Sale Notice Parties within three (3) calendar days of service of such Sale Notice, the Debtor is authorized to consummate such transaction immediately; and

v.   if a written objection is received from a Sale Notice Party within such three-day (3-day) period, the relevant Assets shall only be sold upon withdrawal of such written objection or an order of the Court allowing the sale to proceed.

c.   Purchasers of Assets pursuant to these Asset Sale Procedures shall be deemed to be good faith purchasers and shall be entitled to the protections of section 363(m) of the Bankruptcy Code.

d.   The Debtor shall file a quarterly report of Asset Sales (a "Report") with the Court and serve the same upon the U.S. Trustee, counsel to the Committee (if appointed), FCC, and those parties requesting notice pursuant to Bankruptcy Rule 2002. Reporting shall commence with the calendar quarter

5

ending on June 30, 2015, and continue each calendar quarter thereafter, with each quarterly Report to be filed and served no later than 30 days after the end of each calendar quarter. Each Report shall include the names of the Purchasers and the types and amounts of the sales made during the calendar quarter in question.

13.    The Debtor respectfully submits that the establishment of the foregoing Asset Sale Procedures is not only desirable, but is also in the best interests of the Debtor's estate, its creditors, and other parties in interest in this chapter 11 case. The sale of Assets in bulk will generate additional value for the benefit of the Debtor's estate and all parties in interest without the additional cost of liquidators, and the proposed Asset Sale Procedures will conserve the Debtor's scarce resources, promote an efficient administration of this chapter 11 case, and expedite the sale of fast-moving assets in an efficient manner that will provide most benefit to the Debtor's estate.

## BASIS FOR RELIEF

I.    **The Sale of Property Pursuant to the Proposed Asset Sale Procedures Is Within the Debtor's Sound Business Judgment.**

14.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate ." 11 U.S.C. § 363(b)(1). The use, sale, or lease of property of the estate, other than in the ordinary course of business, is authorized when there is an "articulated business justification" for the action to be taken. *See Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (citations omitted). When a valid business justification exists, the debtor's decision to use property out of the ordinary course of business is entitled to a presumption of validity, and that the debtor "acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citations and internal quotations omitted).

6

15.    By reducing the time and associated cost of selling the Assets in the manner set forth herein, value will be maximized.  Accordingly, the sale of property under the proposed Asset Sale Procedures is an exercise of the Debtor's sound business judgment and is in the best interests of the Debtor's estates and creditors.  The proposed Asset Sale Procedures are the most efficient and cost-effective means of maximizing value and avoiding unnecessary administrative costs and delay.

## II.    The Court Should Approve the Asset Sales Free and Clear of Liens.

16.    Section 363(f) of the Bankruptcy Code authorizes a sale of property free and clear of Liens if:  (1) applicable nonbankruptcy law permits such a free and clear sale; (2) the holder of the interest consents; (3) the interest is a lien and the sales price of the property exceeds the value of all liens on the property; (4) the interest is in bona fide dispute; or (5) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  11 U.S.C. § 363(f).  Because section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed sale.  *See Scherer v. Fed. Nat'l Mortg. Ass'n (In re Terrace Chalet Apts., Ltd.)*, 159 B.R. 821, 825 (N.D. Ill. 1993) (sale extinguishes liens under section 363(f) as long as *one* of the five specified exceptions applies).

17.    The Debtor is informed that its primary secured lender with a lien on inventory and accounts receivable, FCC, does not oppose the relief sought herein.  As such, any proposed sales of FCC's collateral free and clear of liens, claims, mortgages, encumbrances, and other interests would satisfy the requirements of section 363(f)(2) of the Bankruptcy Code.  To the extent the Debtor seeks to sell any Assets on which an entity other than FCC has a Lien, such party will receive the Sale Notice and will have an opportunity to object.  The Debtor believes that the only other potential entity that holds a Lien, on some equipment, is Merchants and Manufacturers Bank ("MMB").  The

7

Debtor expects to work with MMB and vet any potential sales of MMB's collateral to avoid drawing an objection to specific Asset sales.

III.    **Sales of Assets Will Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code.**

18.    Section 363(m) of the Bankruptcy Code provides in relevant part that the reversal or modification on appeal of an authorization under section 363(b) of a sale or lease of property does not affect the validity of a sale or lease under such authorization to a purchaser who bought or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. *See* 11 U.S.C. § 363(m). "Although the Bankruptcy Code does not define the meaning of 'good-faith purchaser,' most courts have adopted a traditional equitable definition: one who purchases the assets for value, in good faith and without notice of adverse claims." *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997) (internal citations omitted). The Third Circuit has held that "[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of [purchaser's] conduct in the course of the sale proceedings. *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (internal citations omitted). Typically, the kind of misconduct that would destroy a purchaser's good faith status involves "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Hoese Corp. v. Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 56 (7th Cir. 1983) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978) (interpreting Bankruptcy Rule 805, the precursor to section 363(m)). The Debtor represents that any agreement that results in the sale of Assets will be the result of an arm's-length transaction entitled to the protections of section 363(m).

8

**IV.     Approval of Proposed Asset Sales on Shortened and Limited Notice Is Appropriate.**

19.     The notice and hearing requirements contained in sections 363(b)(1) are satisfied if appropriate notice and an opportunity for a hearing are provided in light of the particular circumstances. *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and an opportunity for a hearing "as [are] appropriate in the particular circumstances"). Moreover, "a requirement of 'notice and a hearing' really means notice and *the opportunity for* a hearing . . . the Bankruptcy Code is explicit in defining 'after notice and a hearing' as 'authorizing an act without an actual hearing if such notice is given properly' *and* no interested party requests a hearing." *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 618 (7th Cir. 2002) (citing 11 U.S.C. § 102(1)(B)) (emphasis in original).

20.     Generally, Bankruptcy Rules 2002(a)(2) and 2002(i) require debtors in possession to provide a minimum of 21 days' notice by mail of proposed sales of property outside the ordinary course of business to "the debtor, the trustee, all creditors and indenture trustee" as well as any committee appointed under section 1102 of the Bankruptcy Code. *See* Bankruptcy Rule 2002(a)(2), 2002(a)(i). However, the Court may shorten such 21-day notice period, or direct another method of giving notice, upon a showing of "cause." *See* Bankruptcy Rule 2002(a)(2). Moreover, courts are authorized to limit notice of asset sales outside of the ordinary course of a debtor's business, even without a prior showing of cause, to any official committee appointed under section 1102 of the Bankruptcy Code and any creditor or equity holder requesting notice. *See* Bankruptcy Rule 2002(i).

21.     Whether notice is appropriate under the circumstances is a question of due process. *See, e.g., In re Boomgarden*, 780 F.2d 657, 661 (7th Cir. 1985). Due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Gates v. City of Chicago*, 623

9

F.3d 389, 401 (7th Cir. 2010) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306,

314 (1950)); *see also Drexel Burnham Lambert Grp., Inc. v. Claimants Identified on Schedule I (In*

*re Drexel Burnham Lambert Grp., Inc.)*, 995 F.2d 1138, 1144 (2d Cir. 1993).  The proposed Asset

Sale Procedures give all interested parties notice and an opportunity to object.  Moreover, the Asset

Sale Procedures state that if an interested party objects to a proposed sale, the Debtor may not

proceed with such sale without seeking Court approval and providing the objecting party an

opportunity for a hearing.  Because the Asset Sale Procedures are reasonably calculated to provide

interested parties notice, an opportunity to object and, if necessary, a hearing, the proposed

procedures satisfy applicable due process standards.

**V.      This Court and Others Have Approved Similar Procedures.**

22.      Courts in this District have approved procedures similar to the Asset Sale Procedures

proposed herein.  *See, e.g., In re Edison Mission Energy,* No. 12-49219 (JPC) (Bankr. N.D. Ill. Jan.

17, 2013) [Docket No. 315] (authorizing sales up to $5 million); *In re XMH Corp. 1 (f/k/a Hartmarx*

*Corp.)*, No. 09-02046 (BWB) (Bankr. N.D. Ill. Mar. 9, 2009) [Docket No. 238] (authorizing sales up

to $1 million); *In re Kimball Hill, Inc.*, No. 08-10095 (SPS) (Bankr. N.D. Ill. May 29, 2008) [Docket

No. 249] (authorizing sales up to $250,000); *In re Sentinel Mgmt. Grp., Inc.*, No. 07-14987 (JHS)

(Bankr. N.D. Ill. Mar. 27, 2008) [Docket No. 456] (authorizing sales up to $15,000); *In re Neumann*

*Homes, Inc.*, No. 07-20412 (ERW) (Bankr. N.D. Ill. Nov. 28, 2007) [Docket No. 201] (authorizing

sales up to $50,000 with limited notice and sales up to $500,000 pursuant to expedited notice

procedures); *In re UAL Corp.*, No. 02-48191 (ERW) (Bankr. N.D. Ill. Jan. 17, 2003) [Docket No.

1038] (authorizing sales up to $15 million); *In re Kmart Corp.*, No. 02-02474 (SPS) (Bankr. N.D. Ill.

Aug. 29, 2002) (authorizing sales up to $2 million).

23.     Similarly, courts in other Districts have also approved procedures similar to the
proposed Asset Sale Procedures. *See, e.g., In re Open Range Communications, Inc.*, No. 11-13188
(KJC) (Bankr. D. Del. Nov. 2, 2011) [Docket No. 194] (authorizing sales up to $350,000); *In re Lear
Corp.*, No. 09-14326 (ALG) (Bankr. S.D.N.Y. July 31, 2009) [Docket No. 267] (authorizing sales up
to $15 million; *In re Visteon Corp.*, No. 09-11786 (CSS) (Bankr. D. Del. July 17, 2009) [Docket
No. 601] (authorizing sales up to $10 million); *In re Calpine Corp.*, No. 05-60200 (BRL) (Bankr.
S.D.N.Y. Mar. 1, 2006) [Docket No. 752] (authorizing sales up to $15 million).

24.     Accordingly, and given the efficiency and cost savings to the Debtor and its estate,
the Debtor respectfully submits that the Court should approve the proposed Asset Sale Procedures.

## WAIVER OF BANKRUPTCY RULE 6004(h)

25.     The Debtor requests that the Court waive the 14-day stay period under Bankruptcy
Rule 6004(h).

## NOTICE

26.     Notice of this Motion has been provided to (i) the office of the United States Trustee
for the Northern District of Illinois, (ii) the holders of the twenty (20) largest unsecured claims
against the Debtor, (iii) counsel to FCC and MMB, and (v) all other parties requesting notice in these
chapter 11 cases. The Debtor respectfully submits that such notice is appropriate and that no other
or further notice need be provided.

## NO PRIOR REQUEST

27.     No prior request for the relief sought in this Motion has been made to this or any
other court.

WHEREFORE, the Debtor respectfully requests that this Court enter an Order (i) granting
the relief requested herein and (ii) granting such other and further relief as may be just and proper.

2619343.6

Respectfully submitted this 29th day of April, 2015.

FRANKGECKER LLP

*/s/ Joseph D. Frank*
   Joseph D. Frank
   Frances Gecker
325 N. LaSalle Street, Suite 625
Chicago, Illinois 60654
Telephone: (312) 276-1400
Facsimile:  (312) 276-0035
Email:  jfrank@fgllp.com
       fgecker@fgllp.com

-and-

GRAY REED & MCGRAW, P.C.
   Jason S. Brookner (pro hac vice pending)
   Micheal W. Bishop (pro hac vice pending)
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:  jbrookner@grayreed.com
       mbishop@grayreed.com

**PROPOSED COUNSEL TO THE DEBTOR**

12

2619343.6

## EXHIBIT A

**Proposed Order**

2619343.6

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GULF PACKAGING, INC.,[1] | ) | Case No. 15-_____ (___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**ORDER ESTABLISHING AND APPROVING PROCEDURES**
**FOR THE SALE OF CERTAIN ASSETS**

Upon the motion to Establish and Approve Procedures for the Sale of Certain Assets (the "Motion") filed by the above-captioned debtor and debtor in possession (the "Debtor"); and the Court having jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court being satisfied that the relief requested in the Motion is in the best interests of the Debtor's estate and its creditors; and it appearing that due and sufficient notice of the Motion has been given by the Debtor under the circumstances and that no further notice is required; and upon hearing on the Motion conducted on _____, 2015 and the record made thereat; and after due deliberation and good cause appearing thereof, it is HEREBY ORDERED THAT:[2]

1.      The Motion is granted as set forth herein.

2.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized to sell or transfer certain Assets without further order of the Court in accordance with the following Asset Sale Procedures:

---

[1] The last four digits of the Debtor's tax identification number are 5030.

[2] Capitalized terms used but not defined herein have the meanings set forth in the Motion.

a.    With regard to sales or transfers of Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a sale price less than or equal to $75,000.00:[3]

    i.    the Debtor is authorized to consummate such transactions if the Debtor determines, in the reasonable exercise of its business judgment, that such sales are in the best interest of the estate, without further order of the Court;

    ii.    any such transactions shall be deemed final and fully authorized by the Court, and shall be free and clear of Liens with such Liens attaching to the proceeds of sale with the same validity, extent, and priority as existed immediately prior to the transaction;

    iii.    the Debtor shall, at least five (5) calendar days prior to closing such sale or effectuating such transfer, give written notice of the sale or transfer substantially in the form attached to the Motion as **Exhibit B** (each notice, a "Sale Notice") to the following (collectively the "Sale Notice Parties"): (a) the Office of the United States Trustee for the Northern District of Illinois (the "U.S. Trustee"); (b) counsel to any statutory committee appointed in this chapter 11 case (the "Committee") and, until such appointment, the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims (the "Committee"); (c) FCC, LLC d/b/a First Capital ("FCC"); (d) any known affected creditor(s), including counsel to any creditor asserting a Lien on the relevant Assets; and (e) those parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "Sale Notice Parties"), and shall file such Sale Notice with the Court; and

    iv.    Each Sale Notice shall contain the following: (a) an identification of the Assets being sold or transferred; (b) an identification of the purchaser of the Assets; (c) the purchase price; and (d) the material terms of the sale or transfer.

b.    With regard to the sales or transfers of Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a sale price greater than $75,000.00 and less than or equal to $250,000.00:

    i.    the Debtor is authorized to consummate such transactions if the Debtor determines, in the reasonable exercise of its business

---

[3] For purposes of these Asset Sale Procedures, sale price shall refer to the Debtor's estimate of the net proceeds of any sale transaction.

2

judgment, that such sales are in the best interest of the estate, without further order of the Court, subject to the below;

ii.     any such transactions shall be free and clear of all Liens with such Liens attaching to the proceeds of sale with the same validity, extent, and priority as existed immediately prior to the transaction;

iii.     the Debtor shall, at least seven (7) calendar days prior to closing such sale or effectuating such transfer, serve a Sale Notice on the Sale Notice Parties, in the form attached to the Motion as **Exhibit B**;

iv.     if no written objections are filed by the Sale Notice Parties within three (3) calendar days of service of such Sale Notice, the Debtor is authorized to consummate such transaction immediately; and

v.     if a written objection is received from a Sale Notice Party within such three-day (3-day) period, the relevant Assets shall only be sold upon withdrawal of such written objection or an order of the Court allowing the sale to proceed.

c.     Purchasers of Assets pursuant to these Asset Sale Procedures shall be deemed to be good faith purchasers and shall be entitled to the protections of section 363(m) of the Bankruptcy Code.

d.     The Debtor shall file a quarterly report of Asset Sales (a "Report") with the Court and serve the same upon the U.S. Trustee, counsel to the Committee (if appointed), FCC, and those parties requesting notice pursuant to Bankruptcy Rule 2002. Reporting shall commence with the calendar quarter ending on June 30, 2015, and continue each calendar quarter thereafter, with each quarterly Report to be filed and served no later than 30 days after the end of each calendar quarter. Each Report shall include the names of the Purchasers and the types and amounts of the sales made during the calendar quarter in question.

3.     Sales to "insiders," as that term is defined in section 101 of the Bankruptcy Code, are excluded from this Order.

4.     Sales and transfers of Assets pursuant to the Asset Sale Procedures shall be deemed to be free and clear of all Liens, with such Liens attaching to the proceeds of such sale or transfer with the same validity, extent, and priority as existed immediately prior to such sale or transfer; provided, however, that proceeds constituting cash collateral shall be subject to the requirements

3

imposed on the Debtors under any orders regarding the use of any cash collateral entered by the

Court in this chapter 11 case, including with respect to any budgets governing or relating to such

use (collectively, the "Cash Collateral Order").

5.      Purchasers and transferees of Assets are entitled to the protections afforded to good-

faith purchasers under section 363(m) of the Bankruptcy Code.

6.      The Sale Notice with regard to the sale or transfer of Assets substantially in the

form attached to the Motion as Exhibit B is hereby authorized and approved.

7.      Service of the Sale Notice is sufficient notice of the sale or transfer of Assets subject

to the Asset Sales Procedures.

8.      With respect to all sale transactions consummated pursuant to this Order, this Order

shall be sole and sufficient evidence of the transfer of title to any particular buyer, and the sale

transactions consummated pursuant to this Order shall be binding upon and shall govern the acts

of all persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register, or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to any of the property sold

pursuant to this Order, including without limitation, all filing agents, filing officers, title agents,

title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental

departments, secretaries of state and federal, state, and local officials, and each of such persons

and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer

of title and shall rely upon this Order in consummating the transactions contemplated hereby.

9.      Nothing contained herein shall prejudice the rights of the Debtor to seek

authorization for the sale of any asset under 11 U.S.C. § 363.

4

10.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

12.    Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtor's rights under the Bankruptcy Code or any other applicable law.

13.    Notwithstanding anything to the contrary contained herein, the relief granted in this Order and any payment to be made, and any authorization contained, hereunder shall be subject to the terms of the Cash Collateral Order, and to the extent there is any inconsistency between the terms of the Cash Collateral Order and any action taken or proposed to be taken hereunder, the terms of the Cash Collateral Order shall control.

14.    The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

15.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____
Chicago, Illinois

_____
UNITED STATES BANKRUPTCY JUDGE

5

2629667.1

## EXHIBIT B

**Form of Sale Notice**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GULF PACKAGING, INC.,[1] | ) | Case No. 15-_____ (___) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

### NOTICE OF SALE

**PLEASE TAKE NOTICE** that, on April 29, 2015, the above-captioned debtor and debtor in possession (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

**PLEASE TAKE FURTHER NOTICE** that, on _____ __, 2015, the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court") entered its *Order Establishing and Approving Procedures for the Sale of Certain Assets* [Docket No. __] (the "Sale Order"), whereby the Bankruptcy Court authorized the Debtor to sell certain assets (the "Assets").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Order, the Debtor proposes to sell the Assets set forth and described on **Exhibit A** attached hereto (the "Sale Assets"). **Exhibit A** identifies, for each Sale Asset, the purchaser, purchase price, and the significant terms of any applicable sale agreement.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Order, if the Assets are being sold for an amount in excess of $75,000, any recipient of this notice may object to the proposed sale within three (3) calendar days of service of this notice.  Objections must be (i) in writing; (ii) served upon counsel to the Debtor as set forth below, **so as to be actually received** no

---

[1] The last four digits of the Debtor's tax identification number are 5030.

2619343.6

later than three (3) calendar days after the date of this notice:  **If you object, the Debtor may not**

**sell the Sale Assets unless you and the Debtor consensually resolve the objection or upon**

**further Bankruptcy Court order approving the sale of such Sale Assets**.

Respectfully submitted this 29th day of April, 2015.

FRANKGECKER LLP
Joseph D. Frank
Frances Gecker
325 N. LaSalle Street, Suite 625
Chicago, Illinois 60654
Telephone: (312) 276-1400
Facsimile:  (312) 276-0035
Email:  jfrank@fgllp.com
        fgecker@fgllp.com

-and-

GRAY REED & McGRAW, P.C.
Jason S. Brookner (pro hac vice pending)
Micheal W. Bishop (pro hac vice pending)
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email: jbrookner@grayreed.com
        mbishop@grayreed.com

**PROPOSED COUNSEL TO THE DEBTOR**