## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
| GULF PACKAGING, INC.,[1] | ) |
|  | ) Case No. 15-15249 |
| Debtor. | ) |
|  | ) Honorable Pamela S. Hollis |
|  | ) |
|  | ) **Hearing Date:** May 5, 2015 |
|  | ) **Hearing Time:** 10:00 a.m. |
|  | ) **Courtroom:** 644 |
|  | ) |

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on **Tuesday, May 5, 2015 at 10:00 a.m.**, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Pamela S. Hollis in the courtroom usually occupied by her, No. 644, in the Dirksen Federal Building at 219 South Dearborn Street, Chicago, Illinois, or whomever may be sitting in her place and stead, and then and there present the **Debtor's Motion for an Order (a) Authorizing Use of Cash Collateral on an Emergency Basis Pending a Final Hearing, and (b) Granting Adequate Protection and Providing Security and Other Relief to FCC, LLC d/b/a First Capital, as Lender**, a copy of which is attached hereto and hereby served upon you, at which time and place you may appear.

---

[1] The last four digits of the Debtor's tax identification number are 5030.

GULF PACKAGING, INC.

By:_____ /s/ *Joseph D., Frank*_____
Joseph D. Frank (IL Bar No. 6216085)
Jeremy C. Kleinman (IL Bar No. 6270080)
**FRANKGECKER, LLP**
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
Telephone: (312) 276-1400
Facsimile: (312) 276-0035
Email: jfrank@fgllp.com
           jkleinman@fgllp.com

            -and-

**GRAY REED & MCGRAW, P.C.**
Jason S. Brookner (*pro hac vice* pending)
Micheal W. Bishop (*pro hac vice* pending)
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email: jbrookner@grayreed.com
           mbishop@grayreed.com

**PROPOSED COUNSEL TO THE DEBTOR**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GULF PACKAGING, INC.,[1] | ) | Case No. 15-15249 (PSH) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## DEBTOR'S MOTION FOR ORDER (A) AUTHORIZING USE CASH COLLATERAL ON AN EMERGENCY BASIS PENDING A FINAL HEARING AND (B) GRANTING ADEQUATE PROTECTION AND PROVIDING SECURITY AND OTHER RELIEF TO FCC, LLC d/b/a FIRST CAPITAL, AS LENDER

Gulf Packaging, Inc., the above-captioned debtor and debtor in possession (the "Debtor," "GPI" or the "Company"), for its Motion (the "Motion") for Order (A) Authorizing Use of Cash Collateral on an Emergency Basis Pending a Final Hearing and (B) Granting Adequate Protection and Providing Security and Other Relief to FCC, LLC d/b/a First Capital, as Lender, respectfully represents:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§1408 and 1409.

### INTRODUCTION

3.      On April 29, 2015 (the "Petition Date"), GPI filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). GPI continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

[1] The last four digits of the Debtor's tax identification number are 5030.

4.      No request has been made for the appointment of a trustee or examiner, and no statutory committee has yet been appointed.

## BACKGROUND

5.      GPI is a national distributor of packaging equipment and supplies, which sells its product by and through several independent entities ("Affiliates").[2]  Many of these Affiliates are also guarantors under GPI's credit facility with FCC, LLC d/b/a First Capital ("FCC"), discussed more fully below.   When GPI is combined with the Affiliates, there are over twenty (20) warehousing locations to better serve GPI's customer base.  When the Debtor is combined with the Affiliates, the overall aggregate amount of historical monthly sales is approximately $9.5 million.

6.      GPI is a private company, with its equity held in equal parts by the Fleck Family Partnership, LLC and CWJ Eagle, LLC (which is affiliated with the Cutshall family).   The members of GPI's board of directors are Jeff Cutshall, Bill Cutshall, Maggie Fleck and Joe Fleck.  As set forth below, individuals within the Cutshall and Fleck families have also guaranteed the debt owing to GPI's secured lender.

7.      GPI is a party to that certain Loan and Security Agreement dated as of March 31, 2014 between GPI and FCC, LCC, d/b/a First Capital ("FCC") (as amended, modified and/or supplemented from time to time, the "FCC Facility"), pursuant to which FCC made loans and other financial accommodations to or for the benefit of the Debtor.  In connection with the FCC Facility, GPI also entered into certain other collateral and ancillary documents (such documents, together with the FCC Facility, are collectively referred to as the "FCC Loan Documents").

---

[2] As used herein, "Affiliate" means a company that has a relationship – formal or informal – to the Debtor, and sells packaging products under a variation of the Gulf name.  Unless otherwise set forth, use of the term "Affiliate" is not intended to have the same meaning as the "affiliate" term of art defined in section 101(2) of the Bankruptcy Code. All rights with respect to this issue are reserved.

2

Advances under the FCC Facility are secured by a first lien on substantially all of GPI's assets.

Secured guarantees have also been issued to FCC, from the following persons and Affiliates:

- Gulf Arizona Packaging Corporation ("Gulf Arizona")
- Carolina-Gulf Packaging, LLC ("Gulf Carolina")
- Florida Gulf Properties, LLC ("Florida Gulf")
- Gulf Packaging – Sacramento, LLC ("Gulf Sacramento")
- Gulf Systems, Inc. ("GSI")
- Gulf-Pacific Packaging Corporation ("Gulf Pacific")
- Gulf-Great Lakes Packaging Corporation ("GGL" or "Gulf Great Lakes")
- Carl Fleck
- Maggie Fleck
- Carol Cutshall
- Jeff Cutshall

8.      Under the FCC Facility, GPI may borrow up to 85% of eligible accounts

receivable, and 50% of eligible inventory.  As draws are made by GPI under the FCC Facility,

the funds are deposited into GPI's operating account at Merchants and Manufacturer's Bank

("MMB"), and used for normal operating expenses.  As of the Petition Date, approximately $9

million is owing to FCC under the FCC Facility, and GPI has approximately 900 unsecured trade

vendors owed approximately $17 million in the aggregate.

9.      Generally speaking, there is a 20% gross profit margin on each sale made by GPI.

Typically, GPI and the Affiliates split that margin evenly, to enable the Affiliates to cover direct

selling costs and commissions owed to salespeople.  The share to GPI is then used to reimburse

the Affiliates for their operating costs relative to their sales and marketing operations, and to pay

GPI's operating costs.

10.     As described more fully in the *Declaration of Edward T. Gavin, CTP In Support

*of Chapter 11 Petition and First Day Pleadings* (the "Gavin Declaration"), filed on the Petition

Date, the anticipated roll-up of GPI and the Affiliates never came to complete fruition.  As also

described in the Gavin Declaration, due to liquidity constraints and related ensuing financial

3

difficulties in late 2014 and early 2015, GPI made the decision that the best way to maximize the

value of assets and business was through an orderly wind-down in chapter 11.

11.     As of the Petition Date, the Debtor was indebted to FCC under the FCC Facility

in an amount not less than $9,024,863.76, exclusive of amounts allowable under section 506(b)

of the Bankruptcy Code. As of the Petition Date, GPI had accounts receivable in the amount of

approximately $8.55 million and inventory with a booked value of $7.6 million.

## **RELIEF REQUESTED**

12.     By this Motion, pursuant to sections 105, 361, 362, 363, 503, 506, 507 and 552 of

the Bankruptcy Code, Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 4001-1 and 4001-2 of the Local

Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local

Rules"), the Debtor respectfully requests entry of an interim order (the "Interim Order") and a

final order (the "Final Order," and together with the Interim Order, the "Cash Collateral

Orders"), substantially in the form attached hereto, authorizing the Debtor to use FCC's cash

collateral and granting adequate protection to FCC, a follows:[3]

- authorizing and approving the Debtor's use of FCC's cash collateral ("Cash Collateral"), pursuant to section 363(c)(2) of the Bankruptcy Code and providing to FCC, under sections 361 and 363(e) of the Bankruptcy Code, adequate protection for the use of such Cash Collateral in the form of replacement liens and superpriority claims to the extent of any diminution of value of such collateral (all as set forth more fully herein and in the Cash Collateral Orders); and

- modifying the automatic stay under section 362(d) to permit the implementation of the terms and conditions of the Cash Collateral Orders and the granting and perfection of the liens and superpriority claims contemplated thereby.

---

[3] In addition to the matters expressly set forth herein, the Debtor also requests that the Court authorize and approve other customary terms typically approved in connection with cash collateral matters, as more fully set forth in the Interim Order.

2628484.3

## CONCISE STATEMENT OF MATERIAL TERMS OF INTERIM ORDER

13.    In accordance with Bankruptcy Rule 4001(b)(1)(B) and Local Rules 4001-2(A)(2)

and (3), the chart below sets forth a summary of the material provisions governing the Debtor's

use of Cash Collateral, the applicable Bankruptcy Rule and/or Local Rule, a justification for the

provision in question if such is required by Local Rule 4001-2(A)(2), and the location of these

material provisions in the Interim Order:[4]

| Material Provision | Summary and Justification For Matters in Local Rule 4001-2(A)(2) | Location in Interim Order |
|---|---|---|
| **Name of each entity with interest in Cash Collateral:**<br><br>Bankruptcy Rule 4001(b)(1)(B)(i) | FCC, LLC, d/b/a First Capital. | Introductory paragraph and ¶E |
| **Purposes for use of Cash Collateral:**<br><br>Bankruptcy Rule 4001(b)(1)(B)(ii) | Cash Collateral may be used for working capital, ordinary business expenses, and to pay the costs of administration of this case, during the term that Cash Collateral usage is authorized, all pursuant to the terms of the Budget. | ¶¶F, 1 |
| **Duration of Use:**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii)<br><br>Local Rule 4001-2(A)(3) | The Debtor's right to use Cash Collateral shall expire upon the earliest to occur of: (a) the date on which FCC provides written notice to counsel for the Debtor and any Committee of the occurrence and continuance of an Event of Default; (b) the date that is 21 days following the entry of the Interim Order if the Final Order is not entered in form and substance satisfactory to FCC by such date; (c) the date of the Final Hearing, if the Interim Order is modified at the Final Hearing in a manner unacceptable to FCC; (d) the date on which the Prepetition Debt is indefeasibly paid in full in cash; and (e) July 29, 2015. | ¶¶1, 4; Exhibit A definition 32 |
| **Adequate Protection:**<br><br>Bankruptcy Rule | The Debtor proposes the following adequate protection for FCC. *First*, validation of the scope, extent and priority of FCC's prepetition | ¶¶3(a)-(c) |

---

[4] Capitalized terms used in this chart have the meanings ascribed to them in the form of Interim Order, unless otherwise defined.

| 4001(b)(1)(B)(iv) | liens.  *Second*, replacement liens on substantially all of the Debtor's assets to the extent of any diminution in the value of the prepetition collateral.  *Third*, superpriority administrative claims pursuant to section 507(b) of the Bankruptcy Code. | |
|---|---|---|
| **Cross Collateralization:**<br><br>Local Rule 4001-2(a)(2)(a) | To the extent there is any cross-collateralization, it is in the form of adequate protection or replacement liens. | ¶¶3(a), (b) |
| **Findings of Fact Binding on Debtor and Parties in Interests and Investigation Period:**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii)<br><br>Local Rule 4001-2(A)(2)(b) | Subject in all respects to the Investigation Period (as defined in the Interim Order at Exhibit A definition 19), the Interim Order contains certain stipulations by the Debtor binding on all parties in interest upon the expiration of the Investigation Period | ¶¶D, 3(a), 7, 22 |
| **Section 506(c) Waiver:**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii)<br><br>Local Rules 4001-2(A)(2)(c) and 4001-2(A)(3) | The Interim Order contains a waiver of the estate's rights under section 506(c) of the Bankruptcy Code, subject to entry of a final order.  The Debtor believes this provision is justified in light of the consideration being provided by FCC, and the fact that it is only effective upon entry of a final order. | ¶6 |
| **Liens on Chapter 5 Causes of Action:**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii)<br><br>Local Rules 4001-2(A)(2)(d) and 4001-2(A)(3) | Subject to entry of a Final Order FCC adequate protection liens will extend the proceeds of chapter 5 causes of action.  The Debtor believes this provision is justified as the grant will only become effective upon entry of a Final Order, and courts in this District have granted similar relief in the past. *E.g.*, *In re Ryan Int'l Airlines, Inc.*, Case No. 12-80802 (Bankr. N.D. Ill. March 7, 2012). | ¶3(b);    Exhibit    A definitions 24, 31 |
| **Prepetition Debt Deemed Postpetition Debt or Paydown of Prepetition Debt:**<br><br>Local Rule 4001-2(a)(2)(e) | No prepetition debt will be deemed postpetition debt.  The Order does contemplate that FCC will apply funds swept in excess of the Budgeted amounts pursuant to the provisions of the Loan Documents, but the nature of the application (whether to 506(b) charges or to the prepetition obligations) may be challenged in accordance with the terms of the order | ¶¶2(c), 10 |

6

| **Carveout and Committee Investigation Period and Investigation Budget:**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii)<br><br>Local Rules 4001-2(A)(2)(b) and (f) | The Order contains a Carveout for the benefit of estate professionals and fees payable to the Office of the US Trustee, in the amount set forth in the budget. The Committee's investigation budget is $25,000 and the Investigation Period is earlier of (i) 75 days after the Petition Date and (ii) 60 days after the formation of the Committee | ¶¶5, 7; Exhibit A definitions 6, 19 |
| --- | --- | --- |
| **Nonconsensual Priming Liens:**<br><br>Local Rule 4001-2(a)(2)(g) | N/A | None |
| **Lender Liability Declaration:**<br><br>Local Rule 4001-2(A)(2)(h) | The Order contains a declaration that it does not impose any liability on FCC, subject to entry of a final order. The Debtor believes this provision is justified given the consideration being provided by FCC. | ¶18 |
| **Waiver/Modification of Automatic Stay:**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii)<br><br>Local Rules 4001-2(A)(2)(i) and 4001-2(A)(3) | The Order contains a provision granting FCC relief from the automatic stay five (5) days after the Termination Date (as defined in the Order). During that five (5) day period, the Debtor may seek an order of the Court determining that an Event of Default has not in fact occurred. The Debtor believes this provision is justified in light of the consideration being provided by FCC, and respectfully submits that this is a relatively standard provision in financing orders. | ¶¶4, 16; Exhibit A definition 32 |
| **Joint and Several Liability:**<br><br>Local Rule 4001-2(a)(2)(j) | N/A | None |
| **Events of Default:**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii)<br><br>Local Rule 4001-2(A)(3) | At FCC's election, (a) the occurrence and continuance of any Event of Default first arising after the Petition Date under the FCC Facility, other than a default under the following provisions of the FCC Facility: 13(a)(v), with respect to any default under any MMB Document if such default gives MMB the right to accelerate the applicable obligation; 13(a)(vii); 13(a)(viii), with respect to postpetition judgments and tax Liens; 13(a)(x), with respect to postpetition transfers; 13(a)(xiii); | Exhibit A definition 13. |

7

| | | |
|---|---|---|
| | 13(a)(xv);    13(a)(xvi),    with   respect   to postpetition   events;   and   13(a)(vxiii);   (b) Debtor's failure to comply with any of its covenants or obligations under and in strict accordance with the terms of the Interim Order; (c) Debtor, without the consent of FCC, seeks the use of Cash Collateral other than in accordance with the terms of this Order, seeks to conduct a Code § 363 sale on terms unacceptable to FCC, or files a chapter 11 plan that is not acceptable to FCC; (d) Debtor, without the consent of FCC, files a motion to incur debt secured by a lien with priority equal to or superior to the Prepetition Liens or Replacement  Liens  or  which  is  given superpriority  administrative  expense  status under Code § 364(c); (e) entry of any order authorizing any party in interest to reclaim any of the Aggregate Collateral, granting any party in interest relief from the automatic stay with respect to the Aggregate Collateral, or requiring that Debtor turnover any of the Aggregate Collateral, in each case prior to full, final and indefeasible repayment of all Prepetition Debt; (f) any material representation or warranty made by Debtor in any certificate, report or financial statement delivered to FCC is, after the Filing Date, discovered or disclosed to FCC to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading); (g) any Case is converted to a case under chapter 7 of the Code; (h) a Trustee is appointed or elected in any Case, or an examiner with the power to operate Debtor's business   is   appointed   in   any   Case; (i) commencement of an adversary proceeding or contested matter by Debtor objecting to the extent, validity or priority of the Prepetition Debt and/or the Prepetition Debt Liens; or (j) this Order, or any other order of this Court is modified, amended, vacated or stayed in any manner not consented to in writing by FCC. | |
| **Budget:**<br><br>Local Rule 4001-2(A)(4) | The Budget is attached to the Order and the Debtor believes the same will be adequate to pay all necessary expenses during the period covered by the Budget. | ¶¶1, 2(c) |

8

## AUTHORITY

### A.    The Use of Cash Collateral Should Be Approved

14.    Under section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). The Debtor requires the use of Cash Collateral to fund its day-to-day operations. The Debtor does not have sufficient available sources of working capital and financing to carry on operations absent continued use of FCC's Cash Collateral. Indeed, absent the use of FCC's Cash Collateral, the Debtor's business will be brought to a halt, with damaging consequences for the Debtor, its estate and creditors. The interests of FCC in the Debtor's Cash Collateral will be protected by the adequate protection set forth below.

### B.    The Proposed Adequate Protection Should be Authorized

15.    Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used . . . by [a debtor in possession], the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Section 361 of the Bankruptcy Code sets forth the forms of adequate protection which may be provided, which include periodic cash payments, additional liens, replacement liens and other forms of relief. 11 U.S.C. § 361. What constitutes adequate protection must be decided on a case-by-case basis. *See MNBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987); *Martin v. U.S. (In re Martin)*, 761 F.2d 472 (8th Cir. 1985); *In re EES Lambert Assocs.*, 62 B.R. 328, 343 (Bankr. N.D. Ill. 1986) (noting "case by case development of adequate protection"). The focus of the requirement is to protect a

9

2628484.3

secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 554 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy") (internal citations omitted).

16.     As noted above, as adequate protection for its interests, the Debtor proposes to provide the following adequate protection to FCC, to the extent of any diminution in the value of its collateral:

- Valid and perfected replacement security interests in and liens (the "Replacement Liens") upon all present and after-acquired property of the Debtor of any nature whatsoever including, without limitation, all cash contained in any account of the Debtor, and proceeds of all causes of action *except for* causes of action arising under Chapter 5 of the Bankruptcy Code, and all products and proceeds of the foregoing (the "Postpetition Collateral," together with the Prepetition Collateral, the "Aggregate Collateral"), subject and subordinate only to the Carveout and Permitted Liens. Said Replacement Liens shall be (i) a first priority perfected lien upon all Postpetition Collateral that is not otherwise encumbered by a validly perfected lien or security interest as of the Petition Date and (ii) a first priority, senior, priming and perfected lien upon that portion of the Postpetition Collateral that is comprised of the Prepetition Collateral; and

- An allowed superpriority administrative expense claim in the Chapter 11 Case against the Debtor and its estate, pursuant to sections 503(b) and 507(b) of the Bankruptcy Code (the "Superpriority Claim"), which, subject to the Carveout, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code.

17.     FCC is, therefore, adequately protected for the Debtor's use of its Cash Collateral.

18.     Without access to Cash Collateral, the Debtor's liquidity will quickly dry up, harming operations and the value of the business. In contrast, the value of FCC's interest in its collateral is preserved, if not increased, by the use of Cash Collateral because it ensures the

uninterrupted continuance of the Debtor's operations which will generate cash and preserve value.

19.    The Debtor believes, and respectfully submits, that Replacement Liens, Superpriority Claims and other protections offered to FCC as adequate protection will, when taken together, sufficiently protect FCC's interests in the collateral.  The proposed adequate protection is fair and reasonable and sufficient to satisfy the requirements of Bankruptcy Code sections 363(c)(2) and (e).

**C.    The Automatic Stay Should Be Modified on a Limited Basis**

20.    The relief requested herein also contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtor to (i) grant the security interests, liens, and Superpriority Claims described above and to allow FCC and the Debtor to perform such acts as may be requested to assure the perfection and priority of such security interests and liens, and (ii) implement the terms of the proposed Cash Collateral Orders.

21.    Stay modifications of this kind are standard fare for cash collateral and postpetition debtor financing facilities and, in the Debtor's business judgment, are reasonable and fair under the present circumstances.  Courts in this District and others have granted similar relief in other recent chapter 11 cases.  *See, e.g., In re Caesars Entertainment Operating Company, Inc.*, Case No. 15-1145 (ABG) (Bankr. N.D. Ill. Mar. 25, 2015) [Docket No. 988]; *In re Dune Energy, Inc.*, Case No. 15-10336 (HCM) (Bankr. W.D. Tex. Mar. 11, 2015) [Docket No. 44]; *In re ALCO Stores, Inc.*, Case No. 14-34941 (SGJ) (Bankr. N.D. Tex. Nov. 14, 2014) [Docket No. 326]; *In re Ryan Int'l Airlines, Inc.*, Case No. 12-80802 (TML) (Bankr. N.D. Ill.

11

Mar. 7, 2012) [Docket No. 44]; *In re XMH Corp. I (f/k/a Hartmax Corp.)*, Case No. 09-2046

(BWB) (Bankr. N.D. Ill. Jan. 26, 2009) [Docket No. 49].[5]

### E.    Interim Approval Should Be Granted

22.     Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion to use cash

collateral may not be commenced earlier than fourteen (14) days after the service of such motion.

Upon request, however, the Court may conduct a preliminary expedited hearing on the motion

and authorize the use of cash collateral to the extent necessary to avoid immediate and

irreparable harm to a debtor's estate pending a final hearing. *See* Bankruptcy Rule 4001(b)(2).

23.     Pursuant to Bankruptcy Rule 4001(b), the Debtor requests that the Court conduct

an expedited preliminary hearing on this Motion and (i) authorize the Debtor to use Cash

Collateral in order to maintain and finance the ongoing operations of the Debtor, and avoid

immediate and irreparable harm and prejudice to the Debtor's estate and all parties in interest

and (ii) schedule the Final Hearing.

24.     Absent authorization from the Court to use Cash Collateral, as requested, on an

interim basis pending the Final Hearing, the Debtor will be immediately and irreparably harmed.

The use of Cash Collateral will provide necessary assurance to the Debtor's vendors, employees,

and clients of the Debtor's ability to meet its near-term obligations.  Failure to meet these

obligations and to provide these assurances likely would have a long-term negative impact on the

value of the Debtor's business, to the detriment of all parties in interest.  Furthermore, the lack of

interim Cash Collateral usage would result in accelerated cash demands on the Debtor.

Accordingly, the interim relief requested is critical to preserving and maintaining the value of the

Debtor and facilitating its chapter 11 efforts.

---

[5] The Debtor has submitted the "Required Statement" pursuant to Local Rule 4001-1 simultaneous with the filing of this Motion.

2628484.3

**NOTICE**

25.    Notice of this Motion has been provided to (i) the office of the United States Trustee for the Northern District of Illinois, (ii) the holders of the twenty (20) largest unsecured claims against the Debtor, (iii) counsel to FCC, (iv) MMB and (v) all other parties requesting notice in these chapter 11 cases. The Debtor respectfully submits that no other or further notice need be provided.

**NO PRIOR REQUEST**

26.    No prior request for the relief sought herein has been made to this Court or any other court.

**WAIVER OF BANKRUPTCY RULE 6004(h)**

27.    To implement the relief requested in this Motion and the terms of the Interim Order, the Debtor respectfully requests that the Court waive the 14-day say set forth in Bankruptcy Rule 6004(h).


[remainder of page intentionally left blank]

13

2628484.3

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court (i) grant the relief requested herein and (ii) grant such other and further relief as may be just and proper.

Respectfully submitted this 30th day of April, 2015.

**FRANK GECKER LLP**

*/s/ Joseph D. Frank*
   Joseph D. Frank
   Frances Gecker
325 N. LaSalle Street, Suite 625
Chicago, Illinois 60654
Telephone: (312) 276-1400
Facsimile: (312) 276-0035
Email: jfrank@fgllp.com
      fgecker@fgllp.com

     -and-

**GRAY REED & MCGRAW, P.C.**
   Jason S. Brookner (pro hac vice pending)
   Micheal W. Bishop (pro hac vice pending)
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
      mbishop@grayreed.com

**PROPOSED COUNSEL TO THE DEBTOR**

## EXHIBIT A

## INTERIM CASH COLLATERAL ORDER

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GULF PACKAGING, INC.,[1] | ) | Case No. 15- 15249 (PSH) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**ORDER AUTHORIZING DEBTOR TO: (A) USE CASH COLLATERAL ON AN**
**EMERGENCY BASIS PENDING A FINAL HEARING; AND (B) GRANT ADEQUATE**
**PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO FCC, LLC, d/b/a**
**FIRST CAPITAL, AS LENDER**

This matter came before this Court on the motion (the "Motion") of Gulf
Packaging, Inc. (the "Debtor") requesting that this Court enter an order authorizing Debtor to: (a)
use certain Cash Collateral on an emergency basis pending a Final Hearing; and (b) grant
adequate protection and provide security and other relief to FCC, LLC, d/b/a First Capital
("Lender"). Unless otherwise indicated, all capitalized terms used as defined terms herein have
the meanings ascribed thereto in Exhibit A attached hereto and by this reference are made a part
hereof.

This Order shall constitute findings of fact and conclusions of law pursuant to
Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the Filing Date.

Having examined the Motion, being fully advised of the relevant facts and
circumstances surrounding the Motion, and having completed a hearing pursuant to Code § 363
and Fed. R. Bankr. P. 4001(b) and (d), and objections, if any, having been withdrawn, resolved or
overruled by the Court, **THE MOTION IS GRANTED, AND THE COURT HEREBY**
**FINDS THAT:**

A.       On the Filing Date, Debtor filed a voluntary petition for relief under
chapter 11 of the Code. Debtor has retained possession of its property and continues to operate
its business as a debtor in possession pursuant to Code §§ 1107 and 1108.

---

[1] The last four digits of the Debtor's tax identification number are 5030.

B.     The Court has jurisdiction over the Case and this proceeding pursuant to 28 U.S.C. § 1334.  Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C.     No Committee has been appointed in this Case.

D.     Subject to Paragraph 7 of this Order, Debtor admits, stipulates and agrees that:

1.     the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship among Debtor and Lender;

2.     the Prepetition Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Documents;

3.     as of the Filing Date, Debtor is liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an allowed claim in an amount not less than $9,024,863.76, exclusive of accrued and accruing Allowable 506(b) Amounts, and is an allowed secured claim in an amount not less than $$9,024,863.76;

4.     no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Code, under applicable non-bankruptcy law or otherwise;

5.     the Prepetition Liens are Priority Liens, subject to Permitted Priority Liens and secure payment of all of the Prepetition Debt;

6.     upon the entry of this Order, Lender's interests in the Prepetition Collateral will be adequately protected, and for purposes of Code §§ 506(c) and 507(b) and Fed. R. Bankr. P. 3012, as of the Filing Date, the value of Lender's interest in the Prepetition Collateral was not less than $11,000,000, based upon the Declaration of Edward T. Gavin, CTP in Support of Chapter 11 Petition and First Day Pleadings;

2

provided, however, that nothing herein shall prejudice Lender's right to later: (1) assert that its interests in the Prepetition Collateral lack adequate protection; and (2) seek a higher valuation of the Prepetition Collateral;

7.      Debtor does not have, and hereby releases, and is forever barred from bringing any claims, counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Documents, the Prepetition Liens, the Prepetition Debt or otherwise, against Lender and its affiliates, subsidiaries, agents, officers, directors, employees, advisors, consultants, predecessors in interest, successors and assigns.

E.      Lender has consented to the terms of this Order and is entitled to adequate protection as set forth herein pursuant to Code §§ 361, 362 and 363 for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date.

F.      Debtor needs to use Cash Collateral as provided herein through the conclusion of the Final Hearing, in order to prevent immediate and irreparable harm to the estate. Entry of this Order will also enhance the possibility of maximizing the value of Debtor's business and assets.

G.      The terms of this Order have been negotiated at arm's length and in good faith.

H.      Under the circumstances of this Case, this Order is a fair and reasonable response to Debtor's request for Lender's consent to the use of Cash Collateral, and the entry of this Order is in the best interest of Debtor's estate and its creditors.

I.      The notice provided by Debtor of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (d) and 9014 and Code §§ 102(1) and 363 and were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED, AND THAT:**

1.      Authorization to Use Cash Collateral.  Debtor is authorized to use Cash Collateral through the Termination Date solely (a) in accordance with the terms and provisions of this Order, (b) to the extent required to pay, when due, those expenses enumerated in the Budget,

3

including the Carveout, subject to the Permitted Variance and (c) to pay Allowable 506(b) Amounts.

2.     Procedure for Use of Cash Collateral.

(a)     Delivery of Cash Collateral to Postpetition Lender.   Debtor shall deposit all Cash Collateral now or hereafter in its possession or control into the Blocked Account (or otherwise deliver such Cash Collateral to Lender in a manner satisfactory to Lender) promptly upon receipt thereof.

(b)     Cash Collateral in Lender's Possession.   Lender is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into Lender's possession or control which constitute Aggregate Collateral or proceeds thereof.  Prior to an Event of Default, Lender will remit to Debtor all Cash Collateral as and when necessary to pay (but in no event to prepay) the expenses set forth in the Budget and Allowable 506(b) Amounts in accordance with the terms of this Order.  On Friday of each week, Debtor, to the extent that the Cash Collateral previously remitted to and held by Debtor is in excess of the disbursements set forth in the Budget for the following week (taking into account the Permitted Variance plus any disbursements to be made during such following week on account of permitted expenses incurred by Debtor in prior periods), will remit any such excess Cash Collateral to Lender for application in accordance with Section 2(c) of this Order. In addition to all other reporting requirements under the Prepetition Documents, on or before Monday of each week, Debtor will provide to Lender, in form and detail acceptable to Lender, a report with respect to (i) Debtor's collections and disbursements and (ii) Debtor's compliance with the Budget on a line-item-by-line-item basis, in each case for the week ending the prior Friday and on a cumulative basis since the Filing Date.

(c)     Application of Cash Collateral.   Lender, at its election, is authorized to apply all Cash Collateral now or hereafter in its possession or control as follows: (1) first, to the payment of Prepetition Debt consisting of Allowable 506(b) Amounts; and (2) second, with respect to Cash Collateral received in excess of permitted expenses set forth in the Budget, to the payment of all other Prepetition Debt in accordance with the Prepetition

4

Documents. All such applications to Prepetition Debt shall be final, subject only to the right of parties in interest to seek a determination in accordance with Paragraph 7 below that such applications to other Prepetition Debt resulted in the payment of any unsecured prepetition claim of Lender.

(d)    <u>Prohibition Against Use of Cash Collateral</u>. Except as provided for in this Order, Debtor will not use or seek to use Cash Collateral, unless, in addition to the satisfaction of all requirements of Code § 363, Lender has consented to such order.

3.    <u>Adequate Protection of Interests of Prepetition Lender in the Prepetition Collateral and the Prepetition Liens</u>. Lender has consented to the terms of this Order and is entitled to adequate protection as set forth herein and to the extent required under Code §§ 361, 362 or 363 (including for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date).

(a)    <u>Priority of Prepetition Liens/Allowance of Lender's Claim</u>. Subject to the terms of Paragraph 7 of this Order: (1) the Prepetition Liens shall constitute Priority Liens, subject the Permitted Priority Liens; (2) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Documents; (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the Code or applicable nonbankruptcy law; (4) the Prepetition Documents are valid and enforceable in all respects; and (5) Lender's claim with respect to the Prepetition Debt shall for all purposes constitute an allowed claim within the meaning of Code § 506 in an amount not less than $9,024,863.76, exclusive of accrued and accruing Allowable 506(b) Amounts.

(b)    <u>Replacement Liens</u>. Lender is hereby granted the Replacement Liens as security for payment of the Prepetition Debt. The Replacement Liens: (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtor or Lender and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any

subsequent conversion or dismissal of the Case. Notwithstanding the foregoing, Debtor is authorized to and shall execute and deliver to Lender such financing statements, mortgages, instruments and other documents as Lender may request from time to time in respect of the Replacement Liens.

(c)    Allowed Code § 507(b) Claim.  If and to the extent the adequate protection of the interests of Lender in the Prepetition Collateral granted pursuant to this Order proves insufficient, Lender shall have an allowed claim under Code § 507(b), subject to the Carveout, in the amount of any such insufficiency, with priority over:  (1) all costs and expenses of administration of the Case that are incurred under any provision of the Code; and (2) the claims of any other party in interest under Code § 507(b).

(d)    No Effect on Guaranty.  Each Guaranty and all related security documents shall remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of Cash Collateral consented to by Lender pursuant to Code § 363.  Each Guarantor is and shall remain liable for the guaranteed obligations under each such Guaranty, subject to any claims or defenses any Guarantor may raise.

4.    Termination Date; Rights and Remedies.

(a)    Effect of Termination Date.  Unless extended by the Court upon the written agreement of Lender, upon the Termination Date without further notice or order of Court: (1) Debtor's authorization to use Cash Collateral hereunder will automatically terminate; (2) Debtor shall be prohibited from using Cash Collateral for any purpose other than application to the Prepetition Debt; and (3) subject to Paragraph 7 of this Order, Lender shall be entitled to apply any Cash Collateral coming into its possession or control to the Prepetition Debt in accordance with Paragraph 2(c) of this Order.

(b)    Rights and Remedies.  On the fifth (5th) business day after the Termination Date, at Lender's election without further order of the Court:  (1) Lender shall have automatic and immediate relief from the automatic stay with respect to the Aggregate Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and shall be

6

entitled to exercise all rights and remedies available to it under the Prepetition Documents and applicable nonbankruptcy law; and (2) Debtor shall surrender the Aggregate Collateral and otherwise cooperate with Lender in the exercise of Lender's rights and remedies under the Prepetition Documents and applicable nonbankruptcy law, including, without limitation, by filing a motion to retain one or more agents to sell, lease or otherwise dispose of the Aggregate Collateral upon the request and subject to terms and conditions acceptable to Lender. Notwithstanding the foregoing, during the five (5) business day period following the Termination Date, Debtor may seek an order of this Court determining that an Event of Default alleged to have given rise to the Termination Date did not occur; provided, however, that during such five (5) business day period, Lender shall have no obligation to consent to any use of Cash Collateral.

(c)    Access to Collateral.    Upon approval of the Final Order, notwithstanding anything to the contrary herein, upon written notice to the landlord of any of Debtor's leased premises that an Event of Default has occurred and is continuing, Lender may enter upon such leased premises for the purpose of exercising any right or remedy with respect to the Aggregate Collateral located thereon and shall be entitled to the Debtor's rights and privileges under such lease(s) without interference from such landlord; provided that Lender shall pay to such landlord rent first accruing after the above referenced written notice and during the period of occupancy by Lender, calculated on a per diem basis.

5.    Carveout.

(a)    Carveout Terms.    The Carveout with respect to each Carveout Professional: (1) shall equal an aggregate amount not to exceed the lesser of (i) the aggregate amount provided in the Budget for such Carveout Professional for the period commencing on the Filing Date and ending on the Termination Date and (ii) the aggregate amount of allowed fees and expenses that accrue during the period commencing on the Filing Date and ending on the Termination Date; (2) shall be reduced dollar-for-dollar by any payments of fees and expenses to such Carveout Professional; and (3) shall be paid out of any prepetition retainer or property of the estate (other than property subject to an unavoidable lien in favor of Lender) before such payments are made from proceeds of the Aggregate Collateral.

7

(b)    Carveout Usage.  No portion of the Carveout and no Aggregate
Collateral may be used to pay any fees or expenses incurred by any entity, including Debtor, any
Committee or the Carveout Professionals, in connection with claims or causes of action adverse
to Lender's interests in the Aggregate Collateral, including (1) preventing, hindering or delaying
Lender's enforcement or realization upon any of the Aggregate Collateral once an Event of
Default has occurred; (2) using or seeking to use Cash Collateral or incurring indebtedness in
violation of the terms hereof, or selling any Aggregate Collateral without Lender's consent; or
(3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent,
amount, perfection, priority or enforceability of the Prepetition Debt or any mortgages, liens or
security interests with respect thereto or any other rights or interests of Lender, or in asserting any
claims or causes of action, including, without limitation, any actions under chapter 5 of the Code,
against Lender; provided, however, that the foregoing shall not apply to costs and expenses, in an
amount not to exceed $25,000, incurred by the Committee's professionals in connection with the
investigation of a potential Challenge in accordance with Paragraph 7 of this Order; provided,
further, however, that the Carveout may be used to pay fees and expenses incurred by the
Carveout Professionals in connection with the negotiation, preparation and entry of this Order or
any amendment hereto consented to by Lender.

(c)    Carveout Procedure.  Debtor shall periodically, upon the request of
Lender, provide to Lender a written report (the "Carveout Report"), in which Debtor discloses its
then current estimate of (1) the aggregate amount of unpaid professional fees, costs and expenses
accrued or incurred by the Carveout Professionals, through the date of the Carveout Report, and
(2) projected fees, costs and expenses of the Carveout Professionals for the 30-day period
following the date of such Carveout Report.  Nothing herein shall be construed as consent by
Lender to the allowance of any fees or expenses of the Carveout Professionals or shall affect the
right of Lender to object to the allowance and payment of such fees, costs or expenses, or the
right of Lender to the return of any portion of the Carveout that is funded with respect to fees and
expenses for a Carveout Professional that are approved on an interim basis that are later denied
on a final basis.  For the avoidance of doubt, no Carveout Professional shall be entitled to any
portion of the Carveout allocated for any other Carveout Professional in the Budget.

8

6. **No Surcharge.** In the exercise of its business judgment, subject to entry of the Final Order, Debtor (or any Trustee) agrees that there shall be no surcharge of the Aggregate Collateral for any purpose, unless agreed to by Lender. Further, Debtor represents that the Budget contains all expenses that are reasonable and necessary for the operation of its business and the preservation of the Aggregate Collateral through the period for which the Budget runs, and therefore includes all items potentially chargeable to Lender under Code § 506(c). Therefore, effective upon entry of the Final Order, Debtor (or any Trustee) shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against Lender or the Aggregate Collateral.

7. **Reservation of Rights; Bar of Challenges and Claims.** The stipulations and representations contained in this Order, including, without limitation, in Paragraphs D, shall be binding on all Challenge Parties, unless and solely to the extent that (i) Debtor receives notice of a potential Challenge during the Investigation Period from any Challenge Party and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.

(a) **Challenge Procedure.** During the Investigation Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists. If a Challenge Party identifies a basis to assert a Challenge, it must notify Debtor during the Investigation Period of its demand that Debtor initiate an action or adversary proceeding relating thereto and from the date that Debtor are so notified, Debtor shall have five (5) days to notify the Challenge Party of whether Debtor intends to initiate such action and ten (10) days to initiate such action. If Debtor notifies such Challenge Party that Debtor does not intend to initiate an action or adversary proceeding, the Challenge Party shall have ten (10) days from the receipt of such notice to initiate an action or adversary proceeding. Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court. Debtor, if timely notified of a potential Challenge, shall retain authority to prosecute, settle or compromise such Challenge in the exercise of its business judgment and subject to any applicable further order of court.

9

(b)      Bar of Challenges and Claims.  If Debtor does not receive notice of a potential Challenge during the Investigation Period (or such later date as agreed in writing by Lender, solely with respect to a potential Challenge against such party, or for cause shown by an order of this Court), without further order of the Court, (1) the claims, liens and security interests of Lender shall be deemed to be allowed for all purposes in this Case and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise, and (2) Debtor and its estate shall be deemed to have waived, released and discharged Lender and its officers, directors, principals, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Order with respect to or in connection with the Prepetition Debt, the Prepetition Liens, the Prepetition Documents or otherwise.

8.      Right to Credit Bid.  In connection with the sale or other disposition of all or any portion of the Aggregate Collateral, whether under Code § 363, Code § 1129 or otherwise, pursuant to Code § 363(k), Lender shall have the right to use the Prepetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral.

9.      Plan.  Unless Lender consents thereto, Debtor shall not seek entry of an order confirming a plan in this Case unless, in connection and concurrently with the entry of an order granting the relief in such motion, the Prepetition Debt is paid in full in cash on the earlier of (a) the effective date thereof, and (b) the Termination Date, notwithstanding anything to the contrary in any such order confirming a plan.

10.     Application of Sale Proceeds.   All proceeds from sales or other dispositions of all or any portion of the Aggregate Collateral other than in the ordinary course shall be remitted to Lender for application in accordance with Paragraph 2(c) of this Order.

11.     Allowance of 506(b) Amounts.   Upon receipt by Debtor of Lender's periodic summary invoices, Debtor is authorized and directed to pay such amounts immediately as Allowable 506(b) Amounts.  Lender shall provide copies of such invoices to the U.S. Trustee and the Committee redacted for privileged or confidential information.  Upon receipt of such

10

invoices, the U.S. Trustee and the Committee shall have ten (10) days to notify the party submitting an invoice for payment of any objection to the reasonableness of such fees and costs. In the absence of such a timely objection, such parties shall be deemed to have irrevocably waived their right to object to such fees and costs.

12.    <u>Waiver of Right to Return/Consent to Setoff</u>.  Debtor hereby waives its rights:  (a) to return any of the Aggregate Collateral pursuant to Code § 546(h); (b) to consent to any order permitting any claims pursuant to Code § 503(b)(9) without Lender's consent or without prior notice to and consultation with Lender; and (c) to consent to setoff pursuant to Code § 553.

13.    <u>Indemnification</u>.  Debtor shall indemnify and hold harmless Lender in accordance with the Prepetition Credit Documents.

14.    <u>No Marshaling</u>.  Neither Lender nor any of the Aggregate Collateral shall be subject to the doctrine of marshaling.

15.    <u>Force and Effect of Prepetition Documents</u>.  Except as modified herein and subject to the other provisions of this Order and the Code, the Prepetition Documents shall remain in full force and effect with respect to the Prepetition Debt.  To the extent there exists any conflict among the terms of the Motion, the Prepetition Documents and this Order, this Order shall govern and control.

16.    <u>Modification of Stay</u>.  The automatic stay of Code § 362 is hereby modified with respect to Lender to the extent necessary to effectuate the provisions of this Order, including, after the Termination Date, to permit Lender to exercise its rights contemplated by Paragraph 4 above.

17.    <u>No Waiver</u>.  Lender shall not be deemed to have suspended or waived any of its rights or remedies under this Order, the Prepetition Documents, or applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Lender and directed to Debtor.  No failure of Lender to require strict performance by Debtor (or by any Trustee) of any provision of this Order shall waive, affect or diminish any right

11

of Lender thereafter to demand strict compliance and performance therewith, and no delay on the part of Lender in the exercise of any right or remedy under this Order, the Prepetition Documents or applicable nonbankruptcy law shall preclude the exercise of any right or remedy. Further, this Order shall not constitute a waiver by Lender of any of its rights under the Prepetition Documents, the Code or applicable nonbankruptcy law, including, without limitation its right to later assert: (1) that any of its interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof; or (2) a claim under Code § 507(b).

18.    "Responsible Person." By taking any actions pursuant to this Order, Lender shall not: (a) be deemed to be in control of the operations or liquidation of Debtor; or (b) be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of Debtor. The foregoing provision of this Paragraph 18 shall not be effective until entry of the Final Order.

19.    Release. Upon the date that the Prepetition Debt is paid in full in cash, and as a condition to the release of the Prepetition Liens, Debtor shall execute and deliver to Lender a general release of any and all claims and causes of action that could have been asserted or raised under or in connection with the Prepetition Documents.

20.    Amendments. Debtor and Lender may enter into amendments or modifications of the Prepetition Documents or the Budget without further notice and hearing or order of this Court; provided, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with this Court.

21.    Proof of Claim. Lender shall not be required to file a proof of claim with respect to any of the Prepetition Debt and the stipulations and findings set forth in this Order shall constitute an informal proof of claim in respect thereof.

22.    Binding Effect. Except as provided in Paragraph 7 herein, this Order shall be binding on all parties in interest in the Case and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after

12

notice and a hearing. If this Order does not become a final nonappealable order, if Debtor or a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (a) subject to Paragraph 7 of this Order, the stipulations, representations, and findings contained in this Order and the relief granted by and the releases contained in this Order; and (b) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash Collateral used prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and Lender shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

      23.   <u>Survival</u>. The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Case: (a) confirming any chapter 11 plan, (b) converting any Case to a case under chapter 7 of the Code, (c) dismissing any Case, (d) withdrawing of the reference of any Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of the Case in this Court. The terms and provisions of this Order shall continue in full force and effect until all of the Prepetition Debt is indefeasibly paid in full in cash and discharged.

      24.   <u>Notice of Final Hearing</u>. The Final Hearing is scheduled for [_____], 2015, and may be continued from time to time without further notice other than that given in open court. Debtor is directed to immediately serve a copy of this Order by first class mail, postage prepaid, on counsel for Lender, Debtor's other secured creditors, Debtor's twenty (20) largest unsecured creditors, and the United States Trustee, which service shall constitute adequate and proper notice of the Final Hearing. Any objection to the Order must be filed with the Court and received by counsel for Debtor, Lender, and the United States Trustee no later than seventy-two (72) hours prior to the commencement of the Final Hearing. Any timely and properly filed and served objection will be heard at the Final Hearing.

[                                                    ]
Hon. [                            ]
United States Bankruptcy Judge

Dated: _____, 2015

14

## EXHIBIT A

## DEFINED TERMS

1.    ***Aggregate Collateral****.*    Collectively, the Prepetition Collateral and the Postpetition Collateral.

2.    ***Allowable 506(b) Amounts****.*    To the extent allowable under Code § 506(b), interest at the default rate of interest as set forth in Section 3(c) of the Prepetition Credit Agreement, all fees, costs, expenses, and other charges due or coming due under the Prepetition Documents or in connection with the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), and all costs and expenses at any time incurred by Lender in connection with: (a) the negotiation, preparation and submission of this Order and any other order or document related hereto, and (b) the representation of Lender in the Case, including in defending any Challenge.

3.    ***Blocked Account****.*    Account no. 359681379772 at Key Bank.

4.    ***Budget****.*    The budget attached to this Order as <u>Exhibit B</u>, as amended, modified or supplemented from time to time, as may be agreed to in writing by Lender.

5.    ***Carveout****.*    Collectively, (a) all fees required to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), and (b) with respect to each Carveout Professional, the allowed fees and disbursements of as may be awarded to such Carveout Professional from time to time pursuant to Code § 330, in the aggregate amount set forth in Paragraph 5 of this Order.

6.    ***Carveout Professionals****.*    Gray Reed & McGraw, P.C., FrankGecker LLP, the professionals authorized by the Court to be retained by the Committee, and the United States Trustee

7.    ***Case****.*    The chapter 11 case or any superseding chapter 7 case of Debtor.

8.    ***Cash Collateral****.*    All "cash collateral," as that term is defined in Code § 363(a), in which Lender has an interest, all deposits subject to setoff rights in favor of Lender, and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including from the sale of inventory and the collection of accounts receivable.

9.    ***Challenge****.*    A claim or cause of action challenging the extent, validity, perfection, priority or enforceability of the Prepetition Debt, the Prepetition Liens or any other claims or causes of action against Lender, which Debtor, the Committee, or another party-in-interest may bring, in accordance with Paragraph 7 of this Order.

10.    ***Challenge Party****.*    The Committee, any Trustee, or other party-in-interest with the requisite standing.

11.   *Code*.  The United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*), as amended, and any successor statute.  Unless otherwise indicated, all statutory section references in this Order are to the Code.

12.   *Committee*.  Any official creditors' committee appointed to represent unsecured creditors in this Case pursuant to Code § 1102.

13.   *Event of Default*.   At Lender's election, (a) the occurrence and continuance of any Event of Default first arising after the Filing Date under the Prepetition Credit Agreement, other than a default under the following provisions of the Prepetition Credit Agreement: 13(a)(v), with respect to any default under any MMB Document if such default gives MMB the right to accelerate the applicable obligation; 13(a)(vii); 13(a)(viii), with respect to postpetition judgments and tax Liens; 13(a)(x), with respect to postpetition transfers; 13(a)(xiii); 13(a)(xv); 13(a)(xvi), with respect to postpetition events; and 13(a)(vxiii); (b) Debtor's failure to comply with any of its covenants or obligations under and in strict accordance with the terms of this Order; (c) Debtor, without the consent of Lender, seeks the use of Cash Collateral other than in accordance with the terms of this Order, seeks to conduct a Code § 363 sale on terms unacceptable to Lender, or files a chapter 11 plan that is not acceptable to Lender; (d) Debtor, without the consent of Lender, files a motion to incur debt secured by a lien with priority equal to or superior to the Prepetition Liens or Replacement Liens or which is given superpriority administrative expense status under Code § 364(c); (e) entry of any order authorizing any party in interest to reclaim any of the Aggregate Collateral, granting any party in interest relief from the automatic stay with respect to the Aggregate Collateral, or requiring that Debtor turnover any of the Aggregate Collateral, in each case prior to full, final and indefeasible repayment of all Prepetition Debt; (f) any material representation or warranty made by Debtor in any certificate, report or financial statement delivered to Lender is, after the Filing Date, discovered or disclosed to Lender to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading); (g) any Case is converted to a case under chapter 7 of the Code; (h) a Trustee is appointed or elected in any Case, or an examiner with the power to operate Debtor's business is appointed in any Case; (i) commencement of an adversary proceeding or contested matter by Debtor objecting to the extent, validity or priority of the Prepetition Debt and/or the Prepetition Liens; or (j) this Order, or any other order of this Court is modified, amended, vacated or stayed in any manner not consented to in writing by Lender.

14.   *Filing Date*.  April 29, 2015.

15.   *Final Hearing*.  The final hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

16.   *Final Order*.  A final order authorizing Debtor to use Cash Collateral and incur Postpetition Debt entered at or in connection with the Final Hearing.

17.   *Guarantors*.  Carl Fleck, Maggie Fleck, Carol Cutshall, and Jeff Cutshall are personal Guarantors.  Gulf-Arizona Packaging Corporation, Carolina-Gulf Packaging L.L.C., Florida Gulf Properties, LLC, Gulf Packaging – Sacramento, LLC, Gulf Systems, Inc., Gulf-Pacific Packaging Corporation, and Gulf-Great Lakes Packaging Corporation are corporate Guarantors.

18.   ***Guaranty***.  That certain (a) Limited Guaranty dated as of March 31, 2014, by and between Lender and Carl Fleck, (b) Limited Guaranty dated as of March 31, 2014, by and between Lender and Maggie Fleck, (c) Limited Guaranty dated as of March 31, 2014, by and between Lender and Carol Cutshall, (d) Limited Guaranty dated as of March 31, 2014, by and between Lender and Jeffrey Cutshall, (e) Guaranty dated as of March 31, 2014, by and between Lender and Gulf-Arizona Packaging Corporation, (f) Guaranty dated as of March 31, 2014, by and between Lender and Carolina-Gulf Packaging L.L.C., (g) Guaranty dated as of March 31, 2014, by and between Lender and Florida Gulf Properties, LLC, (h) Guaranty dated as of March 31, 2014, by and between Lender and Gulf Packaging – Sacramento, LLC, (i) Guaranty dated as of March 31, 2014, by and between Lender and Gulf Systems, Inc., (j) Guaranty dated as of March 31, 2014, by and between Lender and Gulf-Pacific Packaging Corporation, and (k) Guaranty dated as of March 31, 2014, by and between Lender and Gulf-Great Lakes Packaging Corporation.

19.   ***Investigation Period***.  The period from the Filing Date until the date that is the earlier of (1) seventy-five (75) days after the Filing Date, and (2) sixty (60) days after the date that a Committee is formed.

20.   ***MMB***.  Merchants and Manufacturers Bank.

21.   ***MMB Documents***.  All loan agreements, promissory notes, mortgages, deeds of trust, guaranties and other instruments, documents and agreements executed and/or delivered in connection with any indebtedness or other obligations of Borrower and/or certain Guarantors to MMB.

22.   ***Permitted Priority Liens***.  Collectively, (a) the Carveout, and (b) liens in favor of third parties upon the Prepetition Collateral, which third-party liens, as of the Filing Date: (1) had priority under applicable law over the Prepetition Liens, (2) were not subordinated by agreement or applicable law, and (3) were non-avoidable, valid, properly perfected and enforceable as of the Filing Date.

23.   ***Permitted Variance***.  Beginning with the second week set forth in the Budget, with respect to collections, sales and expenses as set forth in the Budget, an amount equal to 90% of the amount set forth in the Budget with respect to each of collections and sales and 105% with respect to expenses, tested on a cumulative and rolling 3-week basis; provided, however, that the aggregate amount of variances with respect collections, sales, and expenses for the period commencing on the Filing Date and ending at the end each week shall not exceed $300,000.

24.   ***Postpetition Collateral***.  All of the real and personal property of Debtor of any description whatsoever, wherever located and whenever arising or acquired, including all cash, accounts, inventory, equipment, fixtures, chattel paper, general intangibles (including, upon entry of the Final Order, claims and proceeds under Code §§ 544, 547, 548, 549, 550 and 553), all leaseholds, all commercial torts, all other "Collateral" (as that term is defined in the Prepetition Credit Agreement), and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

25. ***Prepetition Collateral***. All of the "Collateral" (as that term is defined in the Prepetition Credit Agreement) existing as of the Filing Date, and all proceeds, rents, issues, profits and products thereof.

26. ***Prepetition Credit Agreement***. That certain Loan and Security Agreement dated as of March 31, 2014, by and between Debtor and Lender, as amended, modified and supplemented from time to time.

27. ***Prepetition Debt***. (a) All indebtedness or obligations under the Prepetition Documents as of the Filing Date, including all "Obligations" (as defined in the Prepetition Credit Agreement), and all fees, costs, interest, and expenses as and when due and payable pursuant to the Prepetition Documents, plus (b) all Allowable 506(b) Amounts.

28. ***Prepetition Documents***. The Prepetition Credit Agreement and the Loan Documents (as that term is defined in the Prepetition Credit Agreement).

29. ***Prepetition Liens***. Lender's asserted security interests in the Prepetition Collateral under the Prepetition Documents, subject only to Permitted Priority Liens.

30. ***Priority Liens***. Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Code, any agreement, or applicable nonbankruptcy law.

31. ***Replacement Liens***. Priority Liens in the Postpetition Collateral granted to Lender pursuant to this Order, subject only to the Permitted Priority Liens.

32. ***Termination Date***. At Lender's election, the earliest to occur of: (a) the date on which Lender provides, via facsimile or overnight mail, written notice to counsel for Debtor and counsel for any Committee of the occurrence and continuance of an Event of Default; (b) the date that is 21 days following the entry of this Order if the Final Order is not entered in form and substance satisfactory to Lender by such date; (c) the date of the Final Hearing, if this Order is modified at the Final Hearing in a manner unacceptable to Lender; (d) the date on which the Prepetition Debt is indefeasibly paid in full in cash; and (e) July 29, 2015.

33. ***Trustee***. Any trustee appointed or elected in the Case.

## **EXHIBIT B**

**BUDGET**

**[attached]**

**Gulf Packaging, Inc.**
13-week Cash Flow Forecast
Chapter 11 Filing

| | | FORECAST w/e 5/1/15 | FORECAST w/e 5/8/15 | FORECAST w/e 5/15/15 | FORECAST w/e 5/22/15 | FORECAST w/e 5/29/15 | FORECAST w/e 6/5/15 | FORECAST w/e 6/12/15 | FORECAST w/e 6/19/15 | FORECAST w/e 6/26/15 | FORECAST w/e 7/3/15 | FORECAST w/e 7/10/15 | FORECAST w/e 7/17/15 | FORECAST w/e 7/24/15 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | |
| Accounts receivable collection | $ | 837,738 | 718,061 | 598,384 | 508,626 | 418,869 | 299,192 | 299,192 | 299,192 | 299,192 | 299,192 | 269,273 | 119,677 | 119,677 | 5,086,264 |
| Inventory sales | | 439,899 | 439,899 | 774,012 | 439,899 | 439,899 | 439,899 | 664,659 | 576,590 | 439,899 | 118,629 | 65,312 | 426,763 | 164,030 | 5,429,388 |
| Other asset sales | | - | - | - | 15,357 | - | - | - | - | - | 19,196 | 23,035 | 19,196 | 76,783 | 153,565 |
| **Total Receipts** | $ | 1,277,637 | 1,157,960 | 1,372,396 | 963,882 | 858,768 | 739,091 | 963,851 | 875,782 | 758,286 | 417,821 | 357,619 | 565,636 | 360,489 | 10,669,218 |
| **Operating Disbursements** | | | | | | | | | | | | | | | |
| *Facilities and Operations* | | | | | | | | | | | | | | | |
| Rent | $ | - | 6,300 | 155,917 | - | - | - | - | 17,236 | - | - | 2,500 | - | 10,000 | 189,453 |
| Utilities | | 12,750 | 9,400 | 1,100 | 1,000 | 12,750 | 9,500 | 1,100 | 1,000 | 12,000 | 9,000 | 2,500 | 1,000 | 1,000 | 74,100 |
| Texas office moving (1x) | | 5,971 | | | | | | | | | | | | | 5,971 |
| Internet / Colocation | | | | | | | | | | | | | | | - |
| Xoys (IT Service Firm) | | 7,500 | 7,500 | 7,500 | 7,500 | 5,000 | 5,000 | 5,000 | 5,000 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 62,500 |
| Shipping for merchandise consolidation | | | | | 50,000 | | | | | | | | | | 50,000 |
| Ref of cust dep for unfilled equip orders | | | | 25,000 | | | | | | | | | | | 25,000 |
| Miscellaneous | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 130,000 |
| *Personnel* | | | | | | | | | | | | | | | |
| Payroll | | 105,383 | 65,000 | | 57,014 | 10,000 | 60,036 | 10,000 | 57,014 | 10,000 | 57,014 | 35,000 | 7,014 | 5,000 | 508,859 |
| Employee Benefits | | | | 37,500 | | | | 5,000 | | | | | | | 42,500 |
| Group HRA Plan | | | | 6,100 | | | | | | | | | | | 6,100 |
| Sales Tax | | | | 90,000 | | | 60,000 | | | | | | | | 150,000 |
| **Subtotal Operating Disbursements** | | 141,604 | 98,200 | 363,500 | 75,514 | 87,750 | 144,536 | 31,100 | 90,250 | 34,500 | 78,514 | 50,000 | 20,514 | 28,500 | 1,244,483 |
| Interest expense | 12% | 21,302 | 19,211 | 17,142 | 15,139 | 13,295 | 11,716 | 10,565 | 8,627 | 7,004 | 5,521 | 4,932 | 4,420 | 3,331 | 142,206 |
| *Professional Fees *Accrual after Ch. 11 Filing* | | | | | | | | | | | | | | | |
| Legal Lead | | 100,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 20,000 | 450,000 |
| Legal Local | | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,800 | 3,850 | 50,000 |
| CRO/FA | | 50,000 | 50,000 | 50,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 400,000 |
| Claims and Noticing Agent | | | 10,000 | | | | 10,000 | | | | | 10,000 | | | 30,000 |
| Creditors Committee | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | | 120,000 |
| Court Costs/UST | | | 10,000 | | | | | 8,500 | | | | 6,875 | | | 25,375 |
| CLH, PC | | 45,000 | 30,000 | 30,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | 5,000 | | 3,500 | 143,500 |
| **Subtotal Professional Fees** | | 208,850 | 143,850 | 123,850 | 73,850 | 73,850 | 83,850 | 82,350 | 73,850 | 73,850 | 78,850 | 80,725 | 68,800 | 52,350 | 1,218,875 |
| **Total Disbursements** | $ | 371,755 | 261,261 | 504,492 | 164,504 | 174,895 | 240,102 | 124,015 | 172,727 | 115,354 | 162,885 | 185,657 | 93,735 | 84,181 | 2,605,564 |
| **Net Cash Flow** | | 905,881 | 896,698 | 867,904 | 799,378 | 683,873 | 498,989 | 839,836 | 703,055 | 642,932 | 254,936 | 221,962 | 471,901 | 276,308 | 8,063,654 |
| **First Capital Loan** | | | | | | | | | | | | | | | |
| Beginning Loan Balance | $ | 9,230,831 | 8,324,950 | 7,428,252 | 6,560,347 | 5,760,969 | 5,077,096 | 4,578,108 | 3,738,271 | 3,035,217 | 2,392,284 | 2,137,348 | 1,915,386 | 1,443,485 | 9,230,831 |
| less Receipts | | (1,277,637) | (1,157,960) | (1,372,396) | (963,882) | (858,768) | (739,091) | (963,851) | (875,782) | (758,286) | (417,821) | (357,619) | (565,636) | (360,489) | (10,669,218) |
| Disbursements | | 371,755 | 261,261 | 504,492 | 164,504 | 174,895 | 240,102 | 124,015 | 172,727 | 115,354 | 162,885 | 185,657 | 93,735 | 84,181 | 2,605,564 |
| Ending Loan Balance | | 8,324,950 | 7,428,252 | 6,560,347 | 5,760,969 | 5,077,096 | 4,578,108 | 3,738,271 | 3,035,217 | 2,392,284 | 2,137,348 | 1,915,386 | 1,443,485 | 1,167,177 | 1,167,177 |
| Ending Excess Cash Balance | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |