UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| GULF PACKAGING, INC.,[1] ) | Case No. 15- 15249 (PSH) |
| ) | |
| Debtor. ) | |
| ) | |

**ORDER AUTHORIZING DEBTOR TO: (A) USE CASH COLLATERAL ON AN EMERGENCY BASIS PENDING A FINAL HEARING; AND (B) GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO FCC, LLC, d/b/a FIRST CAPITAL, AS LENDER**

This matter came before this Court on the motion (the "Motion") of Gulf Packaging, Inc. (the "Debtor") requesting that this Court enter an order authorizing Debtor to: (a) use certain Cash Collateral on an emergency basis pending a Final Hearing; and (b) grant adequate protection and provide security and other relief to FCC, LLC, d/b/a First Capital ("Lender"). Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference are made a part hereof.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the Filing Date.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a hearing pursuant to Code § 363 and Fed. R. Bankr. P. 4001(b) and (d), and objections, if any, having been withdrawn, resolved or overruled by the Court, **THE MOTION IS GRANTED, AND THE COURT HEREBY FINDS THAT:**

      A.    On the Filing Date, Debtor filed a voluntary petition for relief under chapter 11 of the Code. Debtor has retained possession of its property and continues to operate its business as a debtor in possession pursuant to Code §§ 1107 and 1108.

---

[1] The last four digits of the Debtor's tax identification number are 5030.
{GULFPACK/001/00042510.DOC/}

B. The Court has jurisdiction over the Case and this proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C. No Committee has been appointed in this Case.

D. Subject to Paragraph 7 of this Order, Debtor admits, stipulates and agrees that:

1. the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship among Debtor and Lender;

2. the Prepetition Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Documents;

3. as of the Filing Date, Debtor is liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an allowed claim in an amount not less than $9,024,863.76, exclusive of accrued and accruing Allowable 506(b) Amounts, and is an allowed secured claim in an amount not less than $9,024,863.76;

4. no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Code, under applicable non-bankruptcy law or otherwise;

5. the Prepetition Liens are Priority Liens, subject to Permitted Priority Liens and secure payment of all of the Prepetition Debt;

6. upon the entry of this Order, Lender's interests in the Prepetition Collateral will be adequately protected, and for purposes of Code §§ 506(c) and 507(b) and Fed. R. Bankr. P. 3012, as of the Filing Date, the value of the Prepetition Collateral in which Lender has an interest was not less than $11,000,000, based upon the Declaration of Edward T. Gavin, CTP in Support of Chapter 11 Petition and First Day

{GULFPACK/001/00042510.DOC/} 2

Pleadings; provided, however, that nothing herein shall prejudice Lender's right to later: (1) assert that its interests in the Prepetition Collateral lack adequate protection; and (2) seek a higher valuation of the Prepetition Collateral;

        7.    Debtor does not have, and hereby releases, and is forever barred from bringing any claims, counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Documents, the Prepetition Liens, the Prepetition Debt or otherwise, against Lender and its affiliates, subsidiaries, agents, officers, directors, employees, advisors, consultants, predecessors in interest, successors and assigns.

        E.    Lender has consented to the terms of this Order and is entitled to adequate protection as set forth herein pursuant to Code §§ 361, 362 and 363 for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date.

        F.    Debtor needs to use Cash Collateral as provided herein through the conclusion of the Final Hearing, in order to prevent immediate and irreparable harm to the estate. Entry of this Order will also enhance the possibility of maximizing the value of Debtor's business and assets.

        G.    The terms of this Order have been negotiated at arm's length and in good faith.

        H.    Under the circumstances of this Case, this Order is a fair and reasonable response to Debtor's request for Lender's consent to the use of Cash Collateral, and the entry of this Order is in the best interest of Debtor's estate and its creditors.

        I.    The notice provided by Debtor of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (d) and 9014 and Code §§ 102(1) and 363 and were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED, AND THAT:**

        1.    <u>Authorization to Use Cash Collateral</u>. Debtor is authorized to use Cash Collateral through the Termination Date solely (a) in accordance with the terms and provisions of this Order, (b) to the extent required to pay, when due, those expenses enumerated in the Budget,

including the Carveout, subject to the Permitted Variance and (c) to pay Allowable 506(b) Amounts.

2. <u>Procedure for Use of Cash Collateral</u>.

(a) <u>Delivery of Cash Collateral to Postpetition Lender</u>. Debtor shall deposit all Cash Collateral now or hereafter in its possession or control into the Blocked Account (or otherwise deliver such Cash Collateral to Lender in a manner satisfactory to Lender) promptly upon receipt thereof.

(b) <u>Cash Collateral in Lender's Possession</u>. Lender is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into Lender's possession or control which constitute Aggregate Collateral or proceeds thereof. Prior to an Event of Default, Lender will remit to Debtor all Cash Collateral as and when necessary to pay (but in no event to prepay) the expenses set forth in the Budget and Allowable 506(b) Amounts in accordance with the terms of this Order. On Friday of each week, Debtor, to the extent that the Cash Collateral previously remitted to and held by Debtor is in excess of the disbursements set forth in the Budget for the following week (taking into account the Permitted Variance plus any disbursements to be made during such following week on account of permitted expenses incurred by Debtor in prior periods), will remit any such excess Cash Collateral to Lender for application in accordance with Section 2(c) of this Order. In addition to all other reporting requirements under the Prepetition Documents, on or before Monday of each week, Debtor will provide to Lender, in form and detail acceptable to Lender, a report with respect to (i) Debtor's collections and disbursements and (ii) Debtor's compliance with the Budget on a line-item-by-line-item basis, in each case for the week ending the prior Friday and on a cumulative basis since the Filing Date.

(c) <u>Application of Cash Collateral</u>. Lender, at its election, is authorized to apply all Cash Collateral now or hereafter in its possession or control as follows: (1) first, to the payment of Prepetition Debt consisting of Allowable 506(b) Amounts; and (2) second, with respect to Cash Collateral received in excess of permitted expenses set forth in the Budget, to the payment of all other Prepetition Debt in accordance with the Prepetition

Documents. All such applications to Prepetition Debt shall be final, subject only to the right of parties in interest to seek a determination in accordance with Paragraph 7 below that such applications to other Prepetition Debt resulted in the payment of any unsecured prepetition claim of Lender.

(d) <u>Prohibition Against Use of Cash Collateral</u>. Except as provided for in this Order, Debtor will not use or seek to use Cash Collateral, unless, in addition to the satisfaction of all requirements of Code § 363, Lender has consented to such order.

3. <u>Adequate Protection of Interests of Prepetition Lender in the Prepetition Collateral and the Prepetition Liens</u>. Lender has consented to the terms of this Order and is entitled to adequate protection as set forth herein and to the extent required under Code §§ 361, 362 or 363 (including for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date).

(a) <u>Priority of Prepetition Liens/Allowance of Lender's Claim</u>. Subject to the terms of Paragraph 7 of this Order: (1) the Prepetition Liens shall constitute Priority Liens, subject to the Permitted Priority Liens; (2) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Documents; (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the Code or applicable nonbankruptcy law; (4) the Prepetition Documents are valid and enforceable in all respects; and (5) Lender's claim with respect to the Prepetition Debt shall for all purposes constitute an allowed claim within the meaning of Code § 506 in an amount not less than $9,024,863.76, exclusive of accrued and accruing Allowable 506(b) Amounts.

(b) <u>Replacement Liens</u>. Lender is hereby granted the Replacement Liens as security for payment of the Prepetition Debt; <u>provided</u> that, during the period prior to the entry of a Final Order, such Replacement Liens shall be limited to the extent there is a diminution in the value of the Prepetition Collateral in which the Lender has an interest, after taking into account any applications of Cash Collateral by the Lender under Section 2(c) of this Order. The Replacement Liens: (1) are and shall be in addition to the Prepetition Liens; (2) are

{GULFPACK/001/00042510.DOC/} 5

and shall be properly perfected, valid and enforceable liens without any further action by Debtor or Lender and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case. Notwithstanding the foregoing, Debtor is authorized to and shall execute and deliver to Lender such financing statements, mortgages, instruments and other documents as Lender may request from time to time in respect of the Replacement Liens.

(c)     <u>Allowed Code § 507(b) Claim</u>. If and to the extent the adequate protection of the interests of Lender in the Prepetition Collateral granted pursuant to this Order proves insufficient, Lender shall have an allowed claim under Code § 507(b), subject to the Carveout, in the amount of any such insufficiency, with priority over: (1) all other claims allowable under Code § 507(a)(2); and (2) the claims of any other party in interest under Code § 507(b).

(d)     <u>No Effect on Guaranty</u>. Each Guaranty and all related security documents shall remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of Cash Collateral consented to by Lender pursuant to Code § 363. Each Guarantor is and shall remain liable for the guaranteed obligations under each such Guaranty, subject to any claims or defenses any Guarantor may raise.

4.    <u>Termination Date; Rights and Remedies</u>.

(a)     <u>Effect of Termination Date</u>. Unless extended by the Court upon the written agreement of Lender, upon the Termination Date without further notice or order of Court: (1) Debtor's authorization to use Cash Collateral hereunder will automatically terminate; (2) Debtor shall be prohibited from using Cash Collateral for any purpose other than application to the Prepetition Debt; and (3) subject to Paragraph 7 of this Order, Lender shall be entitled to apply any Cash Collateral coming into its possession or control to the Prepetition Debt in accordance with Paragraph 2(c) of this Order.

(b) <u>Rights and Remedies</u>. On the fifth (5th) business day after the Termination Date, at Lender's election without further order of the Court: (1) Lender shall have automatic and immediate relief from the automatic stay with respect to the Aggregate Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and shall be entitled to exercise all rights and remedies available to it under the Prepetition Documents and applicable nonbankruptcy law; and (2) Debtor shall surrender the Aggregate Collateral and otherwise cooperate with Lender in the exercise of Lender's rights and remedies under the Prepetition Documents and applicable nonbankruptcy law, including, without limitation, by filing a motion to retain one or more agents to sell, lease or otherwise dispose of the Aggregate Collateral upon the request and subject to terms and conditions acceptable to Lender. Notwithstanding the foregoing, during the five (5) business day period following the Termination Date, Debtor may seek an order of this Court (i) determining that an Event of Default alleged to have given rise to the Termination Date did not occur; or (ii) prior to the entry of the Final Order, reimposing the automatic stay with respect to the Aggregate Collateral; <u>provided, however</u>, that during such five (5) business day period, Lender shall have no obligation to consent to any use of Cash Collateral.

(c) <u>Access to Collateral</u>. Upon approval of the Final Order, notwithstanding anything to the contrary herein, upon written notice to the landlord of any of Debtor's leased premises that an Event of Default has occurred and is continuing, Lender may enter upon such leased premises for the purpose of exercising any right or remedy with respect to the Aggregate Collateral located thereon and shall be entitled to the Debtor's rights and privileges under such lease(s) without interference from such landlord; <u>provided</u> that Lender shall pay to such landlord rent first accruing after the above referenced written notice and during the period of occupancy by Lender, calculated on a per diem basis.

5. <u>Carveout</u>.

(a) <u>Carveout Terms</u>. The Carveout with respect to each Carveout Professional: (1) shall equal an aggregate amount not to exceed the lesser of (i) the aggregate amount provided in the Budget for such Carveout Professional for the period commencing on the Filing Date and ending on the Termination Date and (ii) the aggregate amount of allowed fees

{GULFPACK/001/00042510.DOC/} 7

and expenses that accrue during the period commencing on the Filing Date and ending on the Termination Date; (2) shall be reduced dollar-for-dollar by any payments of fees and expenses to such Carveout Professional; and (3) shall be paid out of any prepetition retainer or property of the estate (other than property subject to an unavoidable lien in favor of Lender) before such payments are made from proceeds of the Aggregate Collateral.

(b)  Carveout Usage.  No portion of the Carveout and no Aggregate Collateral may be used to pay any fees or expenses incurred by any entity, including Debtor, any Committee or the Carveout Professionals, in connection with claims or causes of action adverse to Lender's interests in the Aggregate Collateral, including (1) preventing, hindering or delaying Lender's enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred; (2) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Aggregate Collateral without Lender's consent; or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Prepetition Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of Lender, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Lender; provided, however, that the foregoing shall not apply to costs and expenses, in an amount not to exceed $25,000, incurred by the Committee's professionals in connection with the investigation of a potential Challenge in accordance with Paragraph 7 of this Order; provided, further, however, that the Carveout may be used to pay fees and expenses incurred by the Carveout Professionals in connection with the negotiation, preparation and entry of this Order or any amendment hereto consented to by Lender.

(c)  Carveout Procedure.  Debtor shall periodically, upon the request of Lender, provide to Lender a written report (the "Carveout Report"), in which Debtor discloses its then current estimate of (1) the aggregate amount of unpaid professional fees, costs and expenses accrued or incurred by the Carveout Professionals, through the date of the Carveout Report, and (2) projected fees, costs and expenses of the Carveout Professionals for the 30-day period following the date of such Carveout Report. Nothing herein shall be construed as consent by Lender to the allowance of any fees or expenses of the Carveout Professionals or shall affect the right of Lender to object to the allowance and payment of such fees, costs or expenses, or the

{GULFPACK/001/00042510.DOC/}                                                                 8

right of Lender to the return of any portion of the Carveout that is funded with respect to fees and expenses for a Carveout Professional that are approved on an interim basis that are later denied on a final basis. For the avoidance of doubt, no Carveout Professional shall be entitled to any portion of the Carveout allocated for any other Carveout Professional in the Budget.

6. <u>No Surcharge</u>. In the exercise of its business judgment, subject to entry of the Final Order, Debtor (or any Trustee) agrees that there shall be no surcharge of the Aggregate Collateral for any purpose, unless agreed to by Lender. Further, Debtor represents that the Budget contains all expenses that are reasonable and necessary for the operation of its business and the preservation of the Aggregate Collateral through the period for which the Budget runs, and therefore includes all items potentially chargeable to Lender under Code § 506(c). Therefore, effective upon entry of the Final Order, Debtor (or any Trustee) shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against Lender or the Aggregate Collateral.

7. <u>Reservation of Rights; Bar of Challenges and Claims</u>. The stipulations and representations contained in this Order, including, without limitation, in Paragraphs D, shall be binding on all Challenge Parties, unless and solely to the extent that (i) Debtor receives notice of a potential Challenge during the Investigation Period from any Challenge Party and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.

(a) <u>Challenge Procedure</u>. During the Investigation Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists. If a Challenge Party identifies a basis to assert a Challenge, it must notify Debtor during the Investigation Period of its demand that Debtor initiate an action or adversary proceeding relating thereto and from the date that Debtor are so notified, Debtor shall have five (5) days to notify the Challenge Party of whether Debtor intends to initiate such action and ten (10) days to initiate such action. If Debtor notifies such Challenge Party that Debtor does not intend to initiate an action or adversary proceeding, the Challenge Party shall have ten (10) days from the receipt of such notice to initiate an action or adversary proceeding or such later date as ordered by the Court. Nothing herein

{GULFPACK/001/00042510.DOC/} 9

shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court. Debtor, if timely notified of a potential Challenge, shall retain authority to prosecute, settle or compromise such Challenge in the exercise of its business judgment and subject to any applicable further order of court.

(b) <u>Bar of Challenges and Claims</u>. If Debtor does not receive notice of a potential Challenge during the Investigation Period (or such later date as agreed in writing by Lender, solely with respect to a potential Challenge against such party, or for cause shown by an order of this Court), without further order of the Court, (1) the claims, liens and security interests of Lender shall be deemed to be allowed for all purposes in this Case and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise, and (2) Debtor and its estate shall be deemed to have waived, released and discharged Lender and its officers, directors, principals, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Order with respect to or in connection with the Prepetition Debt, the Prepetition Liens, the Prepetition Documents or otherwise.

8. <u>Right to Credit Bid</u>. Subject to entry of the Final Order, in connection with the sale or other disposition of all or any portion of the Aggregate Collateral, whether under Code § 363, Code § 1129 or otherwise, pursuant to Code § 363(k), Lender shall have the right to use the Prepetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral.

9. <u>Plan</u>. Subject to entry of the Final Order, unless Lender consents thereto, Debtor shall not seek entry of an order confirming a plan in this Case unless, in connection and concurrently with the entry of an order granting the relief in such motion, the Prepetition Debt is paid in full in cash on the earlier of (a) the effective date thereof, and (b) the Termination Date, notwithstanding anything to the contrary in any such order confirming a plan.

10. <u>Application of Sale Proceeds</u>. Subject to entry of the Final Order, all proceeds from sales or other dispositions of all or any portion of the Aggregate Collateral other

than in the ordinary course shall be remitted to Lender for application in accordance with Paragraph 2(c) of this Order.

11. <u>Allowance of 506(b) Amounts</u>. Upon receipt by Debtor of Lender's periodic summary invoices, Debtor is authorized and directed to pay such amounts immediately as Allowable 506(b) Amounts; <u>provided</u> that prior to entry of a Final Order, Lender will not invoice Debtor for any Allowable 506(b) Amounts other than interest with respect to the Prepetition Debt. Lender shall provide copies of such invoices to the U.S. Trustee and the Committee redacted for privileged or confidential information. Upon receipt of such invoices, the U.S. Trustee and the Committee shall have ten (10) days to notify the party submitting an invoice for payment of any objection to the reasonableness of such fees and costs. In the absence of such a timely objection, such parties shall be deemed to have irrevocably waived their right to object to such fees and costs.

12. <u>Waiver of Right to Return/Consent to Setoff</u>. Subject to entry of the Final Order, Debtor hereby waives its rights: (a) to return any of the Aggregate Collateral pursuant to Code § 546(h) without the written consent of Lender; (b) to consent to any order permitting any claims pursuant to Code § 503(b)(9) without Lender's consent or without prior notice to and consultation with Lender; and (c) to consent to setoff pursuant to Code § 553.

13. <u>Indemnification</u>. For the period prior to the entry of the Final Order, Debtor shall indemnify and hold harmless Lender in accordance with the Prepetition Credit Documents.

14. <u>No Marshaling</u>. Subject to entry of the Final Order, neither Lender nor any of the Aggregate Collateral shall be subject to the doctrine of marshaling.

15. <u>Force and Effect of Prepetition Documents</u>. Except as modified herein and subject to the other provisions of this Order and the Code, the Prepetition Documents shall remain in full force and effect with respect to the Prepetition Debt. To the extent there exists any conflict among the terms of the Motion, the Prepetition Documents and this Order, this Order shall govern and control.

16. <u>Modification of Stay</u>. The automatic stay of Code § 362 is hereby modified with respect to Lender to the extent necessary to effectuate the provisions of this Order, including, after the Termination Date, to permit Lender to exercise its rights contemplated by Paragraph 4 above.

17. <u>No Waiver</u>. Lender shall not be deemed to have suspended or waived any of its rights or remedies under this Order, the Prepetition Documents, or applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Lender and directed to Debtor. No failure of Lender to require strict performance by Debtor (or by any Trustee) of any provision of this Order shall waive, affect or diminish any right of Lender thereafter to demand strict compliance and performance therewith, and no delay on the part of Lender in the exercise of any right or remedy under this Order, the Prepetition Documents or applicable nonbankruptcy law shall preclude the exercise of any right or remedy. Further, this Order shall not constitute a waiver by Lender of any of its rights under the Prepetition Documents, the Code or applicable nonbankruptcy law, including, without limitation its right to later assert: (1) that any of its interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof; or (2) a claim under Code § 507(b).

18. "<u>Responsible Person</u>." By taking any actions pursuant to this Order, Lender shall not: (a) be deemed to be in control of the operations or liquidation of Debtor; or (b) be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of Debtor. The foregoing provision of this Paragraph 18 shall not be effective until entry of the Final Order.

19. <u>Release</u>. Subject to entry of the Final Order, upon the date that the Prepetition Debt is paid in full in cash, and as a condition to the release of the Prepetition Liens, Debtor shall execute and deliver to Lender a general release of any and all claims and causes of action that could have been asserted or raised under or in connection with the Prepetition Documents.

20. **Amendments.** Debtor and Lender may enter into amendments or modifications of the Prepetition Documents or the Budget without further notice and hearing or order of this Court; provided, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with this Court.

21. **Proof of Claim.** Lender shall not be required to file a proof of claim with respect to any of the Prepetition Debt and the stipulations and findings set forth in this Order shall constitute an informal proof of claim in respect thereof.

22. **Binding Effect.** Except as provided in Paragraph 7 herein, this Order shall be binding on all parties in interest in the Case and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after notice and a hearing. If this Order does not become a final nonappealable order, if Debtor or a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (a) subject to Paragraph 7 of this Order, the stipulations, representations, and findings contained in this Order and the relief granted by and the releases contained in this Order; and (b) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash Collateral used prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and Lender shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

23. **Survival.** The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Case: (a) confirming any chapter 11 plan, (b) converting any Case to a case under chapter 7 of the Code, (c) dismissing any Case, (d) withdrawing of the reference of any Case from this Court, or (e) providing for abstention

from handling or retaining of jurisdiction of the Case in this Court. The terms and provisions of this Order shall continue in full force and effect until all of the Prepetition Debt is indefeasibly paid in full in cash and discharged.

24. <u>Notice of Final Hearing</u>. The Final Hearing is scheduled for May 26, 2015 at 10:00 a.m., and may be continued from time to time without further notice other than that given in open court. Debtor is directed to immediately serve a copy of this Order by first class mail, postage prepaid, on counsel for Lender, Debtor's other secured creditors, Debtor's twenty (20) largest unsecured creditors, and the United States Trustee, which service shall constitute adequate and proper notice of the Final Hearing. Any objection to the Order must be filed with the Court and received by counsel for Debtor, Lender, and the United States Trustee no later than May 19, 2015. Any timely and properly filed and served objection will be heard at the Final Hearing.

_____
Hon. Pamela S. Hollis
United States Bankruptcy Judge

MAY -5 2015
Dated: May ___, 2015

## EXHIBIT A

## DEFINED TERMS

1. ***Aggregate Collateral.*** Collectively, the Prepetition Collateral and the Postpetition Collateral.

2. ***Allowable 506(b) Amounts.*** To the extent allowable under Code § 506(b), interest at the default rate of interest as set forth in Section 3(c) of the Prepetition Credit Agreement, all fees, costs, expenses, and other charges due or coming due under the Prepetition Documents or in connection with the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), and all costs and expenses at any time incurred by Lender in connection with: (a) the negotiation, preparation and submission of this Order and any other order or document related hereto, and (b) the representation of Lender in the Case, including in defending any Challenge.

3. ***Blocked Account.*** Account no. 359681379772 at Key Bank.

4. ***Budget.*** The budget attached to this Order as Exhibit B, as amended, modified or supplemented from time to time, as may be agreed to in writing by Lender.

5. ***Carveout.*** Collectively, (a) all fees required to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), and (b) with respect to each Carveout Professional, the allowed fees and disbursements of as may be awarded to such Carveout Professional from time to time pursuant to Code § 330, in the aggregate amount set forth in Paragraph 5 of this Order.

6. ***Carveout Professionals.*** Gray Reed & McGraw, P.C., FrankGecker LLP, the professionals authorized by the Court to be retained by the Committee, and the United States Trustee

7. ***Case.*** The chapter 11 case or any superseding chapter 7 case of Debtor.

8. ***Cash Collateral.*** All "cash collateral," as that term is defined in Code § 363(a), in which Lender has an interest, all deposits subject to setoff rights in favor of Lender, and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including from the sale of inventory and the collection of accounts receivable.

9. ***Challenge.*** A claim or cause of action challenging the extent, validity, perfection, priority or enforceability of the Prepetition Debt, the Prepetition Liens or any other claims or causes of action against Lender, which Debtor, the Committee, or another party-in-interest may bring, in accordance with Paragraph 7 of this Order.

10. ***Challenge Party.*** The Committee, any Trustee, or other party-in-interest with the requisite standing.

{GULFPACK/001/00042510.DOC/}

11. *Code.* The United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*), as amended, and any successor statute. Unless otherwise indicated, all statutory section references in this Order are to the Code.

12. *Committee.* Any official creditors' committee appointed to represent unsecured creditors in this Case pursuant to Code § 1102.

13. *Event of Default.* At Lender's election, (a) the occurrence and continuance of any Event of Default first arising after the Filing Date under the Prepetition Credit Agreement, other than a default under the following provisions of the Prepetition Credit Agreement: 13(a)(v), with respect to any default under any MMB Document if such default gives MMB the right to accelerate the applicable obligation; 13(a)(vii); 13(a)(viii), with respect to postpetition judgments and tax Liens; 13(a)(x), with respect to postpetition transfers; 13(a)(xiii); 13(a)(xv); 13(a)(xvi), with respect to postpetition events; and 13(a)(vxiii); (b) Debtor's failure to comply with any of its covenants or obligations under and in strict accordance with the terms of this Order; (c) Debtor, without the consent of Lender, seeks the use of Cash Collateral other than in accordance with the terms of this Order, seeks to conduct a Code § 363 sale on terms unacceptable to Lender, or files a chapter 11 plan that is not acceptable to Lender; (d) Debtor, without the consent of Lender, files a motion to incur debt secured by a lien with priority equal to or superior to the Prepetition Liens or Replacement Liens or which is given superpriority administrative expense status under Code § 364(c); (e) entry of any order authorizing any party in interest to reclaim any of the Aggregate Collateral, granting any party in interest relief from the automatic stay with respect to the Aggregate Collateral, or requiring that Debtor turnover any of the Aggregate Collateral, in each case prior to full, final and indefeasible repayment of all Prepetition Debt; (f) any material representation or warranty made by Debtor in any certificate, report or financial statement delivered to Lender is, after the Filing Date, discovered or disclosed to Lender to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading); (g) any Case is converted to a case under chapter 7 of the Code; (h) a Trustee is appointed or elected in any Case, or an examiner with the power to operate Debtor's business is appointed in any Case; (i) commencement of an adversary proceeding or contested matter by Debtor objecting to the extent, validity or priority of the Prepetition Debt and/or the Prepetition Liens; or (j) this Order, or any other order of this Court is modified, amended, vacated or stayed in any manner not consented to in writing by Lender.

14. *Filing Date.* April 29, 2015.

15. *Final Hearing.* The final hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

16. *Final Order.* A final order authorizing Debtor to use Cash Collateral and incur Postpetition Debt entered at or in connection with the Final Hearing.

17. *Guarantors.* Carl Fleck, Maggie Fleck, Carol Cutshall, and Jeff Cutshall are personal Guarantors. Gulf-Arizona Packaging Corporation, Carolina-Gulf Packaging L.L.C., Florida Gulf Properties, LLC, Gulf Packaging – Sacramento, LLC, Gulf Systems, Inc., Gulf-Pacific Packaging Corporation, and Gulf-Great Lakes Packaging Corporation are corporate Guarantors.

{GULFPACK/001/00042510.DOC/}

18. **Guaranty.** That certain (a) Limited Guaranty dated as of March 31, 2014, by and between Lender and Carl Fleck, (b) Limited Guaranty dated as of March 31, 2014, by and between Lender and Maggie Fleck, (c) Limited Guaranty dated as of March 31, 2014, by and between Lender and Carol Cutshall, (d) Limited Guaranty dated as of March 31, 2014, by and between Lender and Jeffrey Cutshall, (e) Guaranty dated as of March 31, 2014, by and between Lender and Gulf-Arizona Packaging Corporation, (f) Guaranty dated as of March 31, 2014, by and between Lender and Carolina-Gulf Packaging L.L.C., (g) Guaranty dated as of March 31, 2014, by and between Lender and Florida Gulf Properties, LLC, (h) Guaranty dated as of March 31, 2014, by and between Lender and Gulf Packaging – Sacramento, LLC, (i) Guaranty dated as of March 31, 2014, by and between Lender and Gulf Systems, Inc., (j) Guaranty dated as of March 31, 2014, by and between Lender and Gulf-Pacific Packaging Corporation, and (k) Guaranty dated as of March 31, 2014, by and between Lender and Gulf-Great Lakes Packaging Corporation.

19. **Investigation Period.** The period from the Filing Date until the date that is the earlier of (1) seventy-five (75) days after the Filing Date, and (2) sixty (60) days after the date that a Committee is formed.

20. **MMB.** Merchants and Manufacturers Bank.

21. **MMB Documents.** All loan agreements, promissory notes, mortgages, deeds of trust, guaranties and other instruments, documents and agreements executed and/or delivered in connection with any indebtedness or other obligations of Borrower and/or certain Guarantors to MMB.

22. **Permitted Priority Liens.** Collectively, (a) the Carveout, and (b) liens in favor of third parties upon the Prepetition Collateral, which third-party liens, as of the Filing Date: (1) had priority under applicable law over the Prepetition Liens, (2) were not subordinated by agreement or applicable law, and (3) were non-avoidable, valid, properly perfected and enforceable as of the Filing Date.

23. **Permitted Variance.** Beginning with the second week set forth in the Budget, with respect to collections, sales and expenses as set forth in the Budget, an amount equal to 90% of the amount set forth in the Budget with respect to each of collections and sales and 105% with respect to expenses, tested on a cumulative and rolling 3-week basis; provided, however, that the aggregate amount of variances with respect collections, sales, and expenses for the period commencing on the Filing Date and ending at the end each week shall not exceed $300,000.

24. **Postpetition Collateral.** All of the real and personal property of Debtor of any description whatsoever, wherever located and whenever arising or acquired, including all cash, accounts, inventory, equipment, fixtures, chattel paper, general intangibles (including, upon entry of the Final Order, claims and proceeds under Code §§ 544, 547, 548, 549, 550 and 553), all leaseholds, all commercial torts, all other "Collateral" (as that term is defined in the Prepetition Credit Agreement), and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

25. ***Prepetition Collateral.*** All of the "Collateral" (as that term is defined in the Prepetition Credit Agreement) existing as of the Filing Date, and all proceeds, rents, issues, profits and products thereof.

26. ***Prepetition Credit Agreement.*** That certain Loan and Security Agreement dated as of March 31, 2014, by and between Debtor and Lender, as amended, modified and supplemented from time to time.

27. ***Prepetition Debt.*** (a) All indebtedness or obligations under the Prepetition Documents as of the Filing Date, including all "Obligations" (as defined in the Prepetition Credit Agreement), and all fees, costs, interest, and expenses as and when due and payable pursuant to the Prepetition Documents, plus (b) all Allowable 506(b) Amounts.

28. ***Prepetition Documents.*** The Prepetition Credit Agreement and the Loan Documents (as that term is defined in the Prepetition Credit Agreement).

29. ***Prepetition Liens.*** Lender's asserted security interests in the Prepetition Collateral under the Prepetition Documents, subject only to Permitted Priority Liens.

30. ***Priority Liens.*** Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Code, any agreement, or applicable nonbankruptcy law.

31. ***Replacement Liens.*** Priority Liens in the Postpetition Collateral granted to Lender pursuant to this Order, subject only to the Permitted Priority Liens.

32. ***Termination Date.*** At Lender's election, the earliest to occur of: (a) the date on which Lender provides, via facsimile or overnight mail, written notice to counsel for Debtor and counsel for any Committee of the occurrence and continuance of an Event of Default; (b) the date that is 21 days following the entry of this Order if the Final Order is not entered in form and substance satisfactory to Lender by such date; (c) the date of the Final Hearing, if this Order is modified at the Final Hearing in a manner unacceptable to Lender; (d) the date on which the Prepetition Debt is indefeasibly paid in full in cash; and (e) July 29, 2015.

33. ***Trustee.*** Any trustee appointed or elected in the Case.

## EXHIBIT B

## BUDGET

**[attached]**

DRAFT & PRELIMINARY

**Gulf Packaging, Inc.**
13-Week Cash Flow Forecast
Chapter 11 Filing

| | FORECAST 5/1/15 | FORECAST 5/8/15 | FORECAST 5/15/15 | FORECAST 5/22/15 | FORECAST 5/29/15 | FORECAST 6/5/15 | FORECAST 6/12/15 | FORECAST 6/19/15 | FORECAST 6/26/15 | FORECAST 7/3/15 | FORECAST 7/10/15 | FORECAST 7/17/15 | FORECAST 7/24/15 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | |
| Accounts receivable collection | $ 837,738 | $ 718,061 | $ 598,184 | $ 508,626 | $ 418,869 | $ 299,192 | $ 299,192 | $ 299,192 | $ 299,192 | $ 268,273 | $ 119,677 | $ 119,677 | $ 5,086,264 |
| Inventory sales | 439,899 | 439,899 | 774,012 | 639,899 | 439,899 | 439,899 | 664,659 | 576,590 | 439,899 | 118,629 | 65,312 | 426,783 | 164,030 | 5,429,388 |
| Other asset sales | | | | 15,357 | | | | | | | 23,015 | 19,196 | 76,783 | 133,565 |
| **Total Receipts** | $ 1,277,637 | $ 1,157,960 | $ 1,372,196 | $ 963,882 | $ 858,768 | $ 739,091 | $ 963,851 | $ 875,782 | $ 756,286 | $ 417,821 | $ 357,619 | $ 565,636 | $ 360,469 | $ 10,669,218 |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| **Facilities and Operations** | | | | | | | | | | | | | | |
| Rent | $ | $ 6,303 | $ 155,817 | $ | $ | $ | $ | $ 17,234 | $ | $ | $ | $ | $ | $ 189,453 |
| Utilities | 12,750 | 9,400 | 1,100 | 1,000 | 12,750 | 9,500 | 2,100 | 1,000 | 12,000 | 9,000 | 2,500 | 1,000 | 10,000 | 74,100 |
| Texas office moving (1x) | 5,971 | | | | | | | | | | | | 1,000 | 5,971 |
| Internet / Colocation | | | | | | | | | | | | | | |
| Keys (IT Service Firm) | 7,500 | 7,500 | 7,500 | 7,500 | 5,000 | 5,000 | 5,000 | 5,000 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 62,500 |
| Shipping for merchandise consolidation | | | 25,000 | | 50,000 | | | | | | | | | 50,000 |
| Ref of cust dep for unfilled equip orders | | | | | | | | | | | | | | 25,000 |
| Miscellaneous | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 130,000 |
| Personnel | | | | | | | | | | | | | | |
| Payroll | 106,383 | 65,000 | 30,383 | 57,014 | | 50,036 | | | | | 35,000 | | 7,014 | 508,859 |
| Employee Benefits | | | 37,500 | | 10,000 | | 10,000 | 57,014 | 10,000 | 57,014 | | | 5,000 | 42,500 |
| Group HRA Plan | | | 6,100 | | | | 5,000 | | | | | | | 6,100 |
| Sales Tax | | | | | | 60,000 | | | | | | | | 150,000 |
| **Subtotal Operating Disbursements** | 143,604 | 98,203 | 363,500 | 75,514 | 87,750 | 144,536 | 31,100 | 90,250 | 34,500 | 78,514 | 50,000 | 20,514 | 28,500 | 1,244,483 |
| Interest expense | 12% | 21,302 | 19,211 | 17,142 | 15,139 | 13,295 | 11,716 | 10,565 | 8,627 | 7,004 | 5,521 | 4,932 | 4,420 | 3,331 | 142,206 |
| **Professional Fees *Accrual after Ch. 11 Filing** | | | | | | | | | | | | | | |
| Legal Lead | 100,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 20,000 | 450,000 |
| Legal Local | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 3,850 | 50,000 |
| CRO/FA | 50,000 | 50,000 | 50,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 400,000 |
| Claims and Noticing Agent | | | | | | | | | | | | | | 80,000 |
| Creditors Committee | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | | 120,000 |
| Court Costs/UST | 45,000 | 30,000 | 30,000 | 5,000 | 5,000 | 8,500 | 5,000 | 5,000 | 5,000 | 6,875 | 5,000 | | | 25,875 |
| CLH, PC | | | | | | | | | | | | | | 143,500 |
| **Subtotal Professional Fees** | 208,850 | 143,850 | 123,850 | 73,850 | 73,850 | 82,350 | 124,015 | 73,850 | 73,850 | 78,850 | 80,725 | 68,800 | 3,500 | 1,218,875 |
| **Total Disbursements** | $ 371,755 | $ 261,263 | $ 504,492 | $ 164,504 | $ 174,895 | $ 240,102 | $ 124,015 | $ 172,727 | $ 115,354 | $ 162,885 | $ 135,657 | $ 93,735 | $ 52,350 | $ 2,605,564 |
| **Net Cash Flow** | $ 905,881 | $ 896,699 | $ 867,904 | $ 799,378 | $ 683,873 | $ 498,989 | $ 839,836 | $ 703,055 | $ 642,932 | $ 254,936 | $ 221,962 | $ 471,901 | $ 276,308 | $ 8,063,654 |
| **First Capital Loan** | | | | | | | | | | | | | | |
| Beginning Balance | $ 9,230,831 | $ 8,324,950 | $ 7,428,252 | $ 6,560,347 | $ 5,760,969 | $ 5,077,096 | $ 4,578,108 | $ 3,738,271 | $ 3,035,217 | $ 2,392,284 | $ 2,137,348 | $ 1,915,386 | $ 1,443,485 | $ 9,230,831 |
| Net Receipts | (1,277,637) | (1,157,960) | (1,372,596) | (963,802) | (858,768) | (739,091) | (963,851) | (875,782) | (758,286) | (417,821) | (357,619) | (565,636) | (360,469) | (10,669,218) |
| Disbursements | 371,755 | 261,261 | 504,492 | 164,504 | 174,895 | 240,102 | 124,015 | 172,727 | 115,354 | 162,885 | 135,657 | 93,735 | 84,181 | 2,605,564 |
| Ending Loan Balance | 8,324,950 | 7,428,252 | 6,560,347 | 5,760,969 | 5,077,096 | 4,578,108 | 3,738,271 | 3,035,217 | 2,392,284 | 2,137,348 | 1,915,386 | 1,443,485 | 1,167,177 | 1,167,177 |
| Ending Excess Cash Balance | | | | | | | | | | | | | | |

CONFIDENTIAL

4/28/15 9:02 PM