**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GULF PACKAGING, INC.,[1] | ) | Case No. 15-15249 |
| | ) | |
| Debtor. | ) | Hon. Pamela S. Hollis |
| | ) | |
| | ) | |
| | ) | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO DEBTOR'S MOTION TO ESTABLISH
AND APPROVE PROCEDURES FOR THE SALE OF CERTAIN ASSETS**

The Official Committee of Unsecured Creditors (the "*Committee*") of Gulf Packaging, Inc. ( "*GPI*" or the "*Debtor*"), by and through its undersigned proposed counsel, hereby submits this objection (the "*Objection*") to the motion (the "*Motion*") of Gulf Packaging, Inc. (the "*Debtor*") to establish and approve procedures (the "*Sale Procedures*") for the sale of certain assets. In support of this Objection, the Committee states as follows:

**PRELIMINARY STATEMENT**

The Committee submits that the Sale Procedures do not provide the Committee with sufficient information or oversight, which is especially troublesome in this case, given that there are numerous non-debtor affiliates that would be likely buyers. This presents the possibility of an insider transaction for less than fair market value.[2] Another concern the Committee has is that the Debtor has stated at the meeting of the largest creditors and on the Court record that its goal is to quickly pay off its secured debt through liquidation. Eleven of the Debtor's affiliates and

---

[1] The last four digits of the Debtor's tax identification number are 5030.

[2] The Committee is not suggesting that the Debtor is planning to sell its assets to non-debtor affiliates for an unfair price, as the Committee has no evidence at this time to support such an assertion. Rather, the Committee is merely stating that the current form of the Sale Procedures would allow such an event to happen without any easy remedy to the Committee's constituents or other parties-in-interest.

insiders are guarantors of that debt. Those insiders, including the Debtor's equity-holders, are motivated to be relieved of their guarantor liability and have conflicts of interest when it comes to making decisions related to how much of a discount should be taken on the sale of the Debtor's assets.

The Committee's oversight is imperative to ensure that the sale process is designed to maximize the value of the assets and, in turn, the recovery to the general unsecured creditors and not solely for the benefit of the secured lender and the guarantors. Accordingly, the Sale Procedures must be modified in order to protect the interests of unsecured creditors.

## SUMMARY OF THE SALE PROCEDURES

The Motion sets forth Sale Procedures to quickly effectuate the piecemeal sale of inventory or equipment with a sale price of no more than $250,000 per transaction. The Sale Procedures can be summarized as follows:

- For sales with a purchase price of $75,000 or less:
  - GPI is authorized to sell the assets without further order of the Bankruptcy Court, so long as it provides at least five calendar days' notice to the Committee, the Office of the U.S. Trustee, FCC and any other lienholder, and all parties requesting service in the chapter 11 case (the "*Sale Notice Parties*").

- For sales with a purchase price between $75,000 and $250,000:
  - GPI is authorized to sell the assets without further order of the Bankruptcy Court, so long as it provides at least seven calendar days' notice to the Sale Notice Parties, and no written objection is filed within three days of receiving notice of the proposed sale.
  - If a written objection is filed, the proposed sale shall not be consummated unless the objection is withdrawn or the Bankruptcy Court enters an order approving the sale.

- GPI must file a quarterly report of all asset sales effectuated under Sale Procedures.

## OBJECTIONS TO SALE PROCEDURES

The Debtor's Sale Procedures are problematic because they do not provide sufficient checks on the Debtor's decision to sell assets, nor do they provide the Committee with sufficient information to evaluate the propriety of any proposed sale. The Committee, therefore, submits that the Sale Procedures should be modified. The Committee's specific objections and proposed modifications are as follows:

1. <u>Opportunity to Object to $75,000 Sales</u>. Notably, the sale thresholds in the Sale Procedures are based on *sale price*, rather than value of the asset being sold, and the Sale Procedures do not afford the Committee the opportunity to object to any sale of assets for $75,000 or less. It is thus possible that the Committee could not stop GPI from selling assets for far less than fair market value. This problem is exacerbated by the fact that GPI has *at least ten* non-debtor affiliates that could be potential buyers. The current Sale Procedures offer no protection against an insider sale for less than reasonably equivalent value.

   **Proposed Modification:** The Sale Procedures should be modified to require the Committee's approval prior to any transaction under the Sale Procedures.

2. <u>Timing of Objections</u>. The Sale Procedures provide no opportunity to object to sales $75,000 or less, and only three days to object to sales up to $250,000. This does not provide the Committee with sufficient time to evaluate potentially substantial sales and determine whether the proposed transactions are in the best interests of unsecured creditors.

   **Proposed Modification:** The Sale Procedures should be modified to require the Committee's approval prior to any transaction under the Sale Procedures. To the extent the Court overrules the Committee's request to require Committee consent for any transaction, the Committee submits that it should be given fourteen days to object to any

3

proposed transaction, or longer, if necessary, upon the Committee filing a request with the Court.

3. <u>Sale Disclosures</u>. The Sale Procedures only require a disclosure of the assets sold, the identification of the purchaser, the purchase price, and "the material terms of the sale or transfer."

**Proposed Modification:** The Debtor should be required to provide the Committee with more thorough disclosures, including: (i) a disclosure as to whether the purchaser is an insider, or owned or controlled by an insider; (ii) *all terms* of the transaction; and (iii) all offers the Debtor has received for the assets, the book value of the assets and any analysis the Debtor has done on the market value of the assets.

4. <u>The Purchase Price Should Not Be Based On Net Proceeds</u>. In a footnote, the Motion references that the sale price refers to the estimated net proceeds of a transaction. It is thus likely that the actual transaction price will exceed $250,000 for certain sales, but the Sale Procedures would not require the disclosure of material terms, such as broker fees or any setoff or other adjustment.

**Proposed Modification:** Any sale notice should disclose the purchase price, an itemization of transaction costs and the expected net proceeds to the estate and the Committee should be provided with any term sheets or proposed sale documents related to the transaction.

5. <u>Good Faith Purchaser Provision</u>. The Sale Procedures provide that *any* buyer is deemed a good faith purchaser. This could preclude the Committee from pursuing a buyer in the

4

event a sale was not an arms' length transaction, despite the fact that the current Sale Procedures do not provide sufficient information to confirm each sale is, in fact, an arms' length transaction.

> **Proposed Modification:** The Sale Procedures should be modified to provide that a buyer is only deemed a good faith purchaser if the Committee consents to such designation.

6. <u>Allocation of Sale Proceeds</u>. The Sale Procedures refer to the cash collateral order (which is subject to a separate Committee objection) as to the allocation of sale proceeds. The proposed final cash collateral order requires all sale proceeds to be turned over to FCC. The Committee, however, must be afforded the opportunity to investigate the validity, priority and extent of the liens of FCC, LLC d/b/a First Capital ("*FCC*"), the Debtor's pre-petition lender, before FCC receives any sale proceeds. This is especially troublesome in this case, because it appears to the Committee that FCC and the guarantors – who benefit from getting out of their debts to FCC by quickly selling the Debtor's assets – are driving the sale process. FCC should not directly receive any sale proceeds at this juncture.

> **Proposed Modification:** The Sale Procedures should be modified to state that the sale proceeds cannot be distributed to any secured creditor until after the Committee has completed its collateral analysis or otherwise consents.

## **CONCLUSION**

The Committee submits that the Sale Procedures should be modified in accordance with the objections raised herein.

Dated: May 22, 2015            **OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF GULF PACKAGING, INC.**

                                        By: _/s/ Shelly A. DeRousse_____
                                                   One of Its Proposed Attorneys

                                                  Richard S. Lauter
                                                  Shelly A. DeRousse
                                                  Devon J. Eggert
                                                  Elizabeth L. Janczak
                                                  FREEBORN & PETERS LLP
                                                  311 South Wacker Drive, Suite 3000
                                                  Chicago, Illinois 60606-6677
                                                  Telephone: 312.360.6000
                                                  Facsimile: 312.360.6520